ROY G. ARMSTRONG, HAZEL H. ARMSTRONG, IRBY B. BUTLER, JOSEPH S. AMEEN, FRANCES B. AMEEN, WILLIAM S. McKINNEY AND VIRGINIA H. McKINNEY v. LYNN W. McINNIS, ADMINISTRATOR OF THE ESTATE OF HERVIE N. WILLIARD; HIGH POINT BANK AND TRUST COMPANY, ADMINISTRATOR OF THE ESTATE OF HERVIE N. WILLIARD; VIVIAN H. WILLIARD, WIDOW; RUSSELL N. WILLIARD, SR. AND WIFE, OLIVE D. WILLIARD; J. WAYNE WILLIARD AND WIFE, VERA F. WILLIARD; NANNIE W. GARLAND, SINGLE; ZELMA W. FREEMON AND HUSBAND, J. MARK FREEMON; G. JAY WILLIARD AND WIFE, BESSIE M. WILLIARD; PATTY M. WILLIARD AND PATTY M. WILLIARD, GUARDIAN FOR COY O. WILLIARD; AGNES C. WILLIARD, WIDOW; JOSEPH L. WILLIARD; JAMES G. SNIPES AND WIFE, MARY R. SNIPES; LEWIS CARTER AND WIFE, MARGARET CARTER; WADE MYERS AND WIFE, SARA MYERS; ROY GIBSON AND WIFE, LOIS GIBSON, ALL OF GUILFORD COUNTY, NORTH CAROLINA, AND THE CITY OF HIGH POINT, A MUNICIPAL CORPORATION OF GUILFORD COUNTY, NORTH CAROLINA.

(Filed 18 June, 1965.)

**1. Municipal Corporations § 25—**

The General Assembly has delegated its police powers to enact zoning regulations to municipal corporations. G.S. 160-172.

**2. Municipal Corporations § 26—**

In an action under the Declaratory Judgment Act to review the validity of a rezoning ordinance of a municipality, the Superior Court is an appellate court authorized to review only questions of law and legal inference arising on the record of the hearing before the zoning commission and the city council, and the court has the discretionary power to refuse a jury trial upon controverted facts, since they are questions of fact and not issues of fact.

**3. Same—**

The courts will not interfere with a duly adopted zoning ordinance unless it is made to appear clearly that the municipal regulation is arbitrary and has no substantial relation to the public health, safety or welfare, and a provision of a zoning ordinance that planned industrial parks should be located between heavy industrial areas and residential areas, and be served by a major thoroughfare, cannot be denominated arbitrary or unreasonable.

**4. Municipal Corporations § 25—**

A rezoned area lies between a residential area and an industrial area notwithstanding that the tracks of a railroad company lie between it and the heavy industrial area.

**5. Municipal Corporations § 26—**

Where petitioners for rezoning an area from a residential to a planned industrial park show a number of inquiries and requests from business concerns for locations, petitioners have produced sufficient evidence of demand for such district within the requirement of the municipal rezoning regulations, and the fact that there had been such inquiries and requests does not tend to show that the municipal governing bodies, in rezoning the area, misused their power in providing for the established need.

**6. Municipal Corporations 25—**

A municipal corporation may zone a part of a tract for commercial purposes and leave a part of the tract zoned for residential purposes as a buffer between the tract rezoned and the adjacent residential area.

**7. Same—**

A zoning ordinance is not a contract between a municipality and its citizens, and the fact that a petition for rezoning a tract for commercial purposes has been denied at the instance of owners of contiguous property does not entitle such owners to object to the later rezoning of a part of the property for commercial purposes under a plan substantially and materially different from the first, particularly in providing a buffer zone some 150 feet wide between the residential area and the part of the tract rezoned for commercial purposes.

**8. Public Officers § 7—**

A person who by proper authority is admitted and sworn into a public office is a *de facto* officer and has authority to discharge the duties of the office until he is removed in accordance with statutory procedure.

**9. Munciipal Corporations § 26—**

The burden is upon those attacking the validity of a municipal zoning ordinance to show that the action of the municipal governing bodies was arbitrary and capricious to such an extent as to amount to an abuse of discretion.

APPEAL by plaintiffs from *Clark (E. B.)*, *S.J.*, 7 December 1964 Civil Session of GUILFORD (High Point Division).

This is an action for a declaratory judgment to determine the validity of the action of the City of High Point in rezoning approximately 200 acres of vacant property within a residential area to a Planned Industrial Park District.

The trial judge, being of the opinion that the matters and questions presented should be heard and determined by the court without a jury, in his discretion heard the evidence offered by the plaintiffs and the defendants and made the following findings of fact, conclusions of law, and entered judgment as hereinafter set out:

"1. All the parties are properly before the court and the court has jurisdiction of the parties and the subject of the action.

"2. The defendants (excepting the defendant City of High Point), hereinafter referred to as the Williard Heirs, are the owners of a tract of land containing approximately 200 acres, hereinafter referred to as the Williard Tract, located in the northeast quadrant of the City of High Point, Guilford County, North Carolina, and being a part of the area annexed to the City of High Point in 1960.

"3. The Williard Tract is generally rectangular in shape and bounded on the north by the Greensboro Road for a distance of approximately 1,332 feet, bounded on the south by the Southern Railway Company right of way and track for a distance of approximately 1,005 feet, and has an average length or depth between the Greensboro Road and Southern Railway right of way of approximately 5,550 feet.

"Greensboro Road is a part of the State Highway system designated as U. S. Highway 29-70A and connects with Lexington Avenue in the City of High Point at 'Five Points,' which is zoned as 'Neighborhood Retail' and located at the northwest corner of the Williard Tract.

"Immediately south of the Southern Railway Company right of way, and running generally parallel therewith, is Kivett Drive, a paved thoroughfare, running from near the business area of the City eastwardly to Interstate 85, a distance of about 4 miles.

"Cedrow Avenue is a paved street running generally in an easterly and westerly direction from a densely populated residential area to the west of the Williard Tract, through the approximate center of the Williard Tract for approximately 1,500 feet, and eastwardly to Scientific Street at the corporate limits of the City of High Point.

"The lands adjoining the Williard Tract on the east, north and west are zoned as residential areas. The area adjoining to the west is substantially developed and populated as residential property. The area adjoining to the north, and along the Greensboro Road, is substantially developed and populated as commercial and residential property. The area adjoining to the east is largely undeveloped and sparsely populated. The plaintiffs Roy G. Armstrong and wife, Hazel Armstrong, own a tract of land of approximately 40 acres which adjoins the Williard Tract on the east and to the north of Cedrow Avenue, with their residence thereon being located some 300 feet east of the eastern property line of Williard Tract.

"The area to the south and adjoining the Williard Tract, consisting of approximately 400 acres, is zoned for heavy industry, designated as Industrial 6, and is substantially populated with a number of industrial plants located on said Kivett Drive. The Williard Tract is basically an undeveloped area of open fields and woods containing only a few scattered outbuildings and one residential structure.

"4. Prior to October 4, 1963, the City of High Point had adopted and the State Highway Commission had approved a Major Thoroughfare and Street Plan for the City of High Point which provides for an expressway designated as the East Belt Line, running generally through the center of the Williard Tract in a northerly and southerly direction, and had executed and entered into a Municipal Agreement setting forth their respective responsibilities regarding said Major Thoroughfare and Street Plan, but bids had not been requested by the State or City for the construction of said East Belt Line.

"5. On April 29, 1963, the Williard Heirs filed with the Planning and Zoning Commission of the City of High Point an application for rezoning of approximately 200 acres of the Williard Tract from Residential A-20 to Planned Industrial Park District, Residential A-2, and Residential B-2. Plaintiffs thereafter filed a protest with the Planning and Zoning Commission consisting of more than 20% of adjacent property owners under G.S. 160-176.

After due notice, a public hearing was held on May 13, 1963, before the Planning and Zoning Commission, at which time all interested persons were afforded full opportunity to be heard. Action was deferred until June 10, 1963, at which time the Planning and Zoning Commission gave further consideration to the proposed rezoning. Action was again deferred until June 12, 1963, at which time the Planning and Zoning Commission unanimously approved and recommended to the Council of the City of High Point a rezoning of the Williard Tract to Planned Industrial Park District.

"6. At a regular meeting of the Council of the City of High Point held on June 21, 1963, a public hearing was called for July 26, 1963, and notice of said hearing was ordered and published in the High Point Enterprise, a newspaper of general circulation in the City of High Point. On August 2, 1963, in accordance with the aforesaid published notice, a hearing was held and all persons present desiring to be heard were given an opportunity to express their views. The Council of the City of High Point voted unanimously to reject the proposed rezoning ordinance recommended by the Planning and Zoning Commission.

"7. On August 19, 1963, the Williard Heirs filed with the Planning and Zoning Commission an application for a new and different plan for rezoning of the Williard Tract from Residential A-20 to Planned Industrial Park District. After due notice, a public hearing was held on September 9, 1963, before the Planning and Zoning Commission, at which time all interested persons were afforded full opportunity to be heard. The Planning and Zoning Commission unanimously approved and recommended to the Council of the City of High Point a rezoning of the Williard Tract from Residential A-20 to Planned Industrial Park District.

"8. The rezoning ordinance recommended by the Planning and Zoning Commission on September 9, 1963, was different from the rezoning ordinance considered by the Council on August 2, 1963, in various respects including the following: provided for the rezoning of one unified tract; relocated the zoning lines at least 101 feet from adjoining residentially zoned property; provided additional building line agreements; and, eliminated access to Cedrow Avenue.

"9. At a regular meeting on September 16, 1963, the Council of the City of High Point called for a public hearing on the rezoning ordinance for October 4, 1963, and due notice of said hearing was published in the High Point Enterprise, a newspaper of general circulation in the City of High Point. On October 4, 1963,

at a regular meeting of the Council of the City of High Point, at which time a quoram was present, the meeting was called to order by the Mayor and it was announced that this was the date set for a public hearing on the adoption of an ordinance rezoning a portion of the Williard Tract from Residential A-20 to Planned Industrial Park District. All interested persons present were given an opportunity to be heard, and after full and thorough discussion, and upon motion duly made and seconded, the Council of the City of High Point voted to adopt the rezoning Ordinance. Five members of the Council, including Virgil P. Carrick, voted in favor of the adoption, and two members of the Council and the Mayor voted against the adoption.

"Mayor Mehan challenged Councilman Carrick's vote. Mayor Mehan declared that the motion to rezone the Williard property was defested because of insufficient majority voting for it. The City Attorney stated that the ordinance required 5 favorable votes for its passage and that a tabulation of the votes disclosed five favorable votes; therefore, the ordinance had passed. Councilman Bencini made a motion that Councilman Carrick's vote be declared valid on the zoning vote. This motion was seconded by Councilman Shelton. Mayor Mehan declared this motion out of order. On roll call vote on this motion, the vote was as follows: AYES: Councilman Bencini, Carrick, Clapp, Hancock, Koonce, and Shelton; Mayor Mehan voted 'No,' and Councilman Eshelman abstained.

"10. The Council of the City of High Point is composed of eight councilmen and a mayor. Virgil P. Carrick was duly elected as a councilman, and prior to October 4, 1963, and on May 13, 1963, took the oath of office and assumed the duties of a councilman. In May, 1938, Virgil P. Carrick was convicted of a felony in Davidson County, North Carolina. On May 10, 1963, and prior to his certification as a duly elected councilman, Virgil P. Carrick was granted a full pardon by the Governor of North Carolina. On November 11, 1963, by proper proceedings in the Superior Court of Guilford County, Virgil P. Carrick was restored to his full rights of citizenship. On December 6, 1963, Virgil P. Carrick resigned as a councilman, and was thereupon duly appointed to fill the vacancy created by his resignation.

"11. None of the plaintiffs own property within the boundaries of the rezoning ordinance adopted by the Council of the City of High Point on October 4, 1963.

"12. About January, 1963, Singer Fidelity, Inc., a large corporation engaged in the manufacture of textile machinery, made a

survey of the City of High Point to locate a site for an industrial plant, and determined that a site of approximately 15 acres in the northern part of the Williard Tract was desirable. Singer Fidelity, Inc. is the size and type of business which would attract allied and desirable industry to the City of High Point. Many other industries had requested various real estate firms, the Chamber of Commerce, and others to locate sites for location of limited industrial uses in a Planned Industrial Park District in the City of High Point. One real estate firm has an average of two to three inquiries per month for such locations. Many other industries had expressed a desire to locate in the City of High Point, and their needs and demands required sites as provided by a Planned Industrial Park District. Prior to October 4, 1963, there was no Planned Industrial Park District available in the City of High Point. There is a need in the City of High Point for an industrial subdivision providing for limited industrial, distributive, research, office and compatible uses, and there is a demand for such a district in the area of the Williard Tract.

"13. There was no prior commitment by the City of High Point to Singer Fidelity, Inc. or any other industry to rezone the Williard Tract to Planned Industrial Park District.

"14. The Williard Tract is located between a heavy industrial area to the south and residential areas to the west, north, and east, and is served by existing and to be served by proposed major thoroughfares. The Williard Tract is not feasible for medium to heavy industrial development because of the proximity to residential areas. It is, however, ideally located and feasible for limited industrial, distributive, research, office and compatible uses, and its uses as a Planned Industrial Park District will provide a harmonious relationship between such use and uses in adjacent districts.

"15. The Williard Heirs employed the firm of R. D. Tillson and Associates, Inc. to prepare a feasible plan for the orderly development of the Williard Tract. R. D. Tillson was Chairman of the Planning and Zoning Commission and President of R. D. Tillson and Associates, Inc. R. D. Tillson disqualified himself at all meetings of the Planning and Zoning Commission at which the rezoning of the Williard Tract was considered. R. D. Tillson at no time used his position as Chairman of the Planning and Zoning Commission to influence any member of the Planning and Zoning Commission, or the Council of the City of High Point, in any

matter pertaining to the rezoning of the Williard Tract, or its adoption on October 4, 1963.

"16. A restrictive covenant agreement was entered into August 7, 1939, by Sally M. Williard (widow) and L. O. Williard and wife, Mary Anne Williard, parties of the first part, and Roy Armstrong and wife, Catherine T. Armstrong, and D. J. Caldwell and wife, Ruby S. Caldwell, parties of the second part, which agreement purports to subject certain lands to restrictions for residential purposes. The evidence fails to disclose the specific location of the subdivision referred to and the court is unable to determine what property, if any, said purported restrictions cover.

"UPON THE FOREGOING FINDINGS OF FACT, THE COURT FINDS AND CONCLUDES AS A MATTER OF LAW, AS FOLLOWS:

"1. The adoption of the rezoning ordinance by the Council of the City of High Point on October 4, 1963, required only a vote of the majority of the Council under Section 2-19 of the Code of Ordinances, and was not a motion to reconsider requiring a two-thirds vote under Section 2-22 of the Code of Ordinances.

"2. On October 4, 1963, Virgil P. Carrick was a *'de facto'* member of the Council of the City of High Point, and the inclusion of his vote in the adoption of the rezoning ordinance does not invalidate such ordinance.

"3. The rezoning ordinance was duly and validly adopted on October 4, 1963, by a vote of the majority of the Council of the City of High Point, in accordance with the Code of Ordinances of the City of High Point and the General Statutes of North Carolina.

"4. The restrictive agreement dated August 7, 1939, does not invalidate the rezoning ordinance of October 4, 1963.

"5. The Council of the City of High Point, in adopting the rezoning ordinance on October 4, 1963, did not act arbitrarily or capriciously, but its action was in good faith, reasonable, and consistent with its comprehensive zoning plan.

"6. The rezoning ordinance adopted by the Council of the City of High Point on October 4, 1963, bears a reasonable and substantial relation to the public safety, health, morals, comfort, welfare and prosperity, and its provisions are not arbitrary, unreasonable or confiscatory.

"Now, THEREFORE, upon the foregoing findings of fact and conclusions of law, IT IS ORDERED, ADJUDGED AND DECREED that the

rezoning ordinance of October 4, 1963, was adopted in accordance with law and is valid; that the plaintiff is not entitled to the relief prayed for in the complaint; and that the costs of this action shall be taxed by the Clerk against the plaintiffs."

From the foregoing findings of fact, conclusions of law, and the judgment entered pursuant thereto, the plaintiffs appeal, assigning error.

*Schoch, Schoch & Schoch for plaintiffs, appellants.*
*Morgan, Byerly, Post & Keziah for defendants, appellees.*
*Knox Walker for defendant City of High Point.*

DENNY, C.J. The appellants' first assignment of error is to the refusal of the trial court to submit issues of fact, allegedly raised by the pleadings, to a jury.

The General Assembly has delegated its police powers to enact zoning regulations to municipal corporations. G.S. 160-172; Strong's North Carolina Index, Vol. III, Municipal Corporations, §§ 25 and 26, page 409, *et seq.; In re O'Neal,* 243 N.C. 714, 92 S.E. 2d 189; *Raleigh v. Fisher,* 232 N.C. 629, 61 S.E. 2d 897; *Kinney v. Sutton,* 230 N.C. 404, 53 S.E. 2d 306.

In *Raleigh v. Fisher, supra,* this Court said:

"In enacting and enforcing zoning regulations, a municipality acts as a governmental agency and exercises the police power of the State. *Kinney v. Sutton,* 230 N.C. 404, 53 S.E. 2d 306; *Elizabeth City v. Aydlett,* 201 N.C. 602, 161 S.E. 78; *S. v. Roberson,* 198 N.C. 70, 150 S.E. 674. The police power is that inherent and plenary power in the State which enables it to govern and to prohibit things hurtful to the health, morals, safety, and welfare of society. *Drysdale v. Prudden,* 195 N.C. 722, 143 S.E. 530; *Skinner v. Thomas,* 171 N.C. 98, 87 S.E. 976. L.R.A. 1916E, 338. In the very nature of things, the police power of the State cannot be bartered away by contract, or lost by any other mode."

In the case of *In re Pine Hill Cemeteries, Inc.,* 219 N.C. 735, 15 S.E. 2d 1, the City of Durham had adopted a comprehensive zoning ordinance. The Board of Adjustment entered an order granting a certificate of occupancy for a nonforming use, and the petitioner applied to the Superior Court for a writ of *certiorari,* which was granted. The trial judge, on motion of petitioner, remanded the cause to the Board of Adjustment with instructions to take further evidence and to find such further facts as might be found therefrom, and upon the facts found, to make a new determination. This Court held:

"While it may be that the board has authority, on proper show-ing, to reopen or rehear for the consideration of additional evi-dence, it has the exclusive right to determine when and upon what conditions this shall be done. The court will not substitute its judgment for that of the board. Nor will it undertake to exercise discretion vested by law in the board.

"Furthermore, in the hearing below on the writ of *certiorari,* the judge was sitting as an appellate court. As such, he was authorized to review questions of law and legal inference arising on the record. The broad discretionary powers vested in him as a trial judge were absent.

"It follows that the court below was without authority to re-mand the cause for a rehearing except for errors of law committed by the board. Nor could he require the board to enter a new determination in the absence of clear legal error or oppressive and manifest abuse of discretion."

As we interpret the record before us, the questions for determination are questions of fact and not issues of fact. *Horton v. Redevelopment Commission,* 262 N.C. 306, 137 S.E. 2d 115; *Housing Authority v. Wooten,* 257 N.C. 358, 126 S.E. 2d 101.

In the case of *In re Housing Authority,* 235 N.C. 463, 70 S.E. 2d 500, this Court said:

"Indeed, so extensive is this discretionary power of housing commissioners that ordinarily the selection of a project site may become an issuable question, determinable by the court, on noth-ing short of allegations charging arbitrary or capricious conduct amounting to abuse of discretion. * * *

"Conceding, as we may, that the issuable question thus pre-sented was a question of fact reviewable by the presiding judge *(Railway Co. v. Gahagan,* 161 N.C. 190, 76 S.E. 696; McIntosh, North Carolina Practice and Procedure, pp. 542, 543), neverthe-less it was within the discretionary power of the Judge to submit the question to the jury for determination. * * *"

In the instant case, the trial judge held in his discretion that the questions presented were questions of fact and should be heard by the court without a jury, and in this ruling we concur. The trial judge be-low, like the trial judge in *In re Pine Hill Cemeteries, Inc., supra,* inso-far as the hearings before the Planning and Zoning Commission and the hearings before the City Council of the City of High Point were concerned, and the official records as to what transpired in said meet-ings in connection with the adoption of the zoning ordinance under

attack, was sitting as an appellate court and was authorized only to review questions of law and legal inferences arising on the record.

This assignment of error is overruled.

Assignment of error No. 2 is based upon the mandatory provisions of the Code of Ordinances of the City of High Point, § 22-16.2, which require, among other things, that Planned Industrial Parks "* * * shall be located between heavy industrial areas and residential areas and in areas served by major thoroughfares that are not feasible for medium to heavy industrial development because of the proximity to residential areas * * *," and the contention that the findings of fact and conclusions of law are insufficient to support the proposed rezoning. We do not concur with the defendants' contentions in this respect. It is argued that since the southern boundary of the Williard Tract is the right of way and tracks of the Southern Railway Company for a distance slightly in excess of 1,000 feet, that the Williard property does not lie between an industrial area and a residential area. There is no dispute about the fact that approximately 400 acres of land immediately to the south of the Williard property, separated only by the right of way of the Southern Railway and Kivett Drive, which runs parallel with the railroad, have been zoned for heavy industry, designated as Industrial 6. Furthermore, some industries in this area are located on the south side of Kivett Drive.

It is conceded that the 200 acre tract of the Williard property is bounded on the north by Highway 29A-70A for a distance of 1,332 feet, and that the average length and depth between the highway on the north and the Southern Railway on the south is approximately 5,550 feet. The area to the east of the Williard property, including Roy G. Armstrong's lands, was previously zoned as Residential A-20. However, except for the Armstrong home, where he has lived since 1938, his property is like the Williard property, unurbanized. To the west of the Williard Tract the area is zoned as residential, except in the area to the northwest of the property there exists a combination of commercial and residential properties.

In the case of *In re Appeal of Parker*, 214 N.C. 51, 197 S.E. 706, the petitioner attacked the validity of a zoning ordinance adopted by the City of Greensboro. From a judgment upholding the ordinance, the petitioner excepted and appealed. This Court, speaking through Barnhill, J., later C. J., said:

> "The courts will not invalidate zoning ordinances duly adopted by a municipality unless it clearly appears that in the adoption of such ordinances the action of the city officials 'has no foundation in reason and is a mere arbitrary or irrational exercise of power

having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.'
* * *

"When the most that can be said against such ordinances is that whether it was an unreasonable, arbitrary or unequal exercise of power is fairly debatable, the courts will not interfere. In such circumstances the settled rule seems to be that the court will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining whether its action is in the interest of the public health, safety, morals, or general welfare. * * * *Harden v.. Raleigh, supra* (192 N.C. 395, 135 S.E. 151), in which the Court quotes with approval from *Rosenthal v. Goldsboro,* 149 N.C. 128 (62 S.E. 905), as follows: 'It may now be considered as established with us that our courts will always be most reluctant to interfere with these municipal governments in the exercise of discretionary powers conferred upon them for the public weal and will never do so unless their action should be so clearly unreasonable as to amount to an oppressive and a manifest abuse of their discretion. This position is, we think supported by the better reason and is in accord with the decided weight of authority.' * * *

"The petitioner complains that the ordinance is an arbitrary and unreasonable restriction upon the petitioner's property rights. That he, due to the particular circumstances of his case, may suffer hardship and inconvenience by an enforcement of the ordinance is not sufficient ground for invalidating it. * * * The fact that the ordinance is harsh and seriously depreciates the value of complainant's property is not enough to establish its invalidity. * * *"

This assignment of error is likewise overruled.

Assignment of error No. 3 is directed to the alleged non-compliance with the mandatory provisions of the Code of Ordinances of the City of High Point, § 22-16.3, which require, among other things, that "(a) The developer shall produce evidence that the district is needed and there is a demand for such district in the area proposed and that intended uses in said district will provide a harmonious relationship between such use and uses in adjacent districts."

In our opinion, the developers offered ample evidence to support the findings of fact with respect to the need for a Planned Industrial Park District in the City of High Point, and we so hold. Furthermore, whether or not such a park is needed and its establishment was in the public interest, involved discretionary power exercised by the City

Council of the City of High Point in its governmental capacity. *In re Markham*, 259 N.C. 566, 131 S.E. 2d 329.

The appellants contend that the action of the City Council of the City of High Point in adopting the ordinance creating the Planned Industrial Park District was a "mere sham, to cover the City's unconscionable misuse of governmental power," in that it, the appellants contend, made tentative commitments to Singer Fidelity, Inc., which concern wanted to purchase a part of the Williard property as a site provided it was zoned as a Planned Industrial Park District, before the application was filed.

There is plenary evidence not only that Singer Fidelity, Inc. was interested in purchasing a site from the Williard heirs, but that the Chamber of Commerce of the City of High Point, and local real estate men had received many inquiries about whether or not such an area was available. If there had not been inquiries or requests for sites in a Planned Industrial Park District, doubtless neither the Zoning Commission nor the City Council would have taken any action to establish such an area. In our opinion, this assignment of error is without merit and is overruled.

Assignment of error No. 4 purports to challenge the legality of the action of the City Council of the City of High Point in its attempt to rezone the Williard property on the ground that, as a matter of law, such action was unreasonable, arbitrary or capricious, and not in furtherance of the public health, safety, morals or general welfare, and any findings of fact or conclusions of law to the contrary are erroneous.

This assignment of error seems to be based largely upon the fact that on 29 April 1963 the Williard Heirs filed with the Planning and Zoning Commission of the City of High Point an application for rezoning the entire 200 acre tract of the Williard property from Residential A-20 to Planned Industrial Park District, and plaintiffs, consisting of more than 20% of the adjacent property owners (see Finding of Fact No. 5), pursuant to the provisions of G.S. 160-176, filed a protest with the Planning and Zoning Commission; whereupon, on 2 August 1963, the City Council unanimously rejected the application. Thereafter, on 19 August 1963, the Williard Heirs filed an application with the Planning and Zoning Commission for a new and different plan for rezoning the Williard Tract from Residential A-20 to Planned Industrial Park District. This plan was different from the original plan in that it relocated the zoning lines at least 101 feet from adjoining residentially zoned property, *et cetera* (see Findings of Fact Nos. 7 and 8).

The creation of a buffer zone of 101 feet around the outer edge of the Williard Tract, which buffer zone is to remain zoned as Residential A-20, is permissible. *Penny v. Durham*, 249 N.C. 596, 107 S.E. 2d 72.

In the last cited case, we upheld the creation or establishment of a buffer strip or zone 150 feet wide, to remain zoned for residential purposes, and further held the ordinance valid which had been adopted by only a majority of the members of the City Council of the City of Durham, rezoning the remainder of the property involved for business purposes. This Court said:

"The fact that Northland owns both the 'buffer strip' and the rezoned area and that both are parts of one tract of land makes no difference in this case. We must consider the matter in the same manner as if these areas were under separate ownership. The 'Zoning Regulations' provide that the City 'may divide the municipality into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this article.' G.S. 160-173. To hold that zoning district lines must coincide with property lines, regardless of area involved, would be to render the act largely ineffective. * * *

"The rezoning ordinance of 2 December, 1957, in question in this case was regularly adopted and is legal and valid. Upon the record before us, the 'buffer strip' is still zoned for one-family residence usage. Whatever the ultimate intention of Northland, the law is adequate to meet any exigency that may arise."

In *McKinney v. High Point,* 239 N.C. 232, 79 S.E. 2d 730, this Court said:

"* * * The adoption of a zoning ordinance does not confer upon citizens living in a Residence A Zone, as therein defined, any vested right to have the ordinance remain forever in force, inviolate and unchanged.

"A zoning ordinance is not a contract between the municipality and its citizens. * * * The adoption of such ordinances is a valid exercise of the police power * * *, which is not exhausted by its use.

"It being a law enacted in the exercise of the police power granted the municipality, no one can acquire a vested right therein. * * * It is subject to amendment or repeal at the will of the governing agency which created it."

This assignment of error is overruled.

The appellants' final assignment of error is to the findings of fact and conclusions of law that the rezoning ordinance was adopted in accordance with the Code of Ordinances of the City of High Point.

The appellants do not challenge the validity of Councilman Carrick's vote on the ground that he had been convicted of a felony in 1938, and

that his citizenship had not been restored in the manner provided by Chapter 13 of the General Statutes of North Carolina (see Findings of Fact Nos. 9 and 10).

The Council of the City of High Point is composed of eight councilmen and a mayor. Five members of the Council, including Virgil P. Carrick, voted in favor of the adoption of the rezoning ordinance and two members of the Council and the Mayor voted against the adoption of the ordinance.

Mayor Mehan challenged Councilman Carrick's vote and declared "the motion to rezone the Williard property was defeated because of insufficient majority voting for it." The City Attorney called attention to the fact that it required only five favorable votes to adopt the ordinance and that five votes had been cast for its adoption and the ordinance had passed. Councilman Bencini made a motion that Councilman Carrick's vote be declared valid on the zoning vote. This motion was duly seconded, and upon a roll call vote, Councilman Bencini, Carrick, Clapp, Hancock, Koonce and Shelton voted for the motion; Mayor Mehan voted against it, and Councilman Eshelman abstained. One member of the Council was absent.

The appellants contend that the Mayor's ruling on Carrick's right to vote was final and could not be overthrown by appeal to the Council to override his ruling. In this we do not concur. G.S. 128-6 provides:

> "Any person who shall, by the proper authority, be admitted and sworn into any office, shall be held, deemed, and taken, by force of such admission, to be rightfully in such office until, by judicial sentence, upon a proper proceeding, he shall be ousted therefrom, or his admission thereto be, in due course of law, declared void."

We hold that Mayor Mehan had no right to deny Councilman Carrick's right to vote. Upon his election, and after having been sworn in as a member of the City Council of the City of High Point, Carrick was a *de facto* councilman until he was removed from said office in a *quo warranto* proceeding or otherwise removed therefrom as provided by law. *In re Wingler*, 231 N.C. 560, 58 S.E. 2d 372, and cited cases.

There are some inconsistencies in the allegations, contentions and arguments of the appellants. On the one hand, they argue that there is no need or justification for the creation of a Planned Industrial Park District in the City of High Point. They further contend there is no assurance that the East Belt Line as contemplated by the City of High Point and the State Highway Commission will ever be built to serve this property (see Finding of Fact No. 4). Yet, they allege in their complaint that prior to the request for rezoning the Williard prop-

erty it had a value of approximately $2,000 per acre; that if the rezoning ordinance is upheld, the value of the Williard land will be increased by $10,000 per acre; therefore, they allege, these plaintiffs and other citizens of High Point will be required to pay about $360,000 for approximately 36 acres of land within the Planned Industrial Park District that will be required for the right of way of the proposed East Belt Line. What proof could be more conclusive of the need for a Planned Industrial Park District than that property within such district will immediately be in such demand that its value will be increased five fold by being included in such a district?

The burden was upon the appellants to show that the action of the City Council of the City of High Point was arbitrary and capricious to such an extent as to amount to an abuse of discretion. We find no evidence on this record of an abuse of discretion on the part of the City Council of the City of High Point, or that the members thereof or any of them acted in bad faith in connection with the adoption of the contested ordinance.

The judgment of the court below is

Affirmed.