THOMAS G. ALLGOOD, JR., FRANKIE C. BIDDLE, DAVID M. CHAP-
PELL, JAMES ELMER CLARK, J. WALLACE COOPER, RUSSEL
HERMAN DEW, JOHNNY EARL EASON, SPENCER L. ED-
WARDS, DIEDRICK H. GASKILL, DAVID H. GRIFFIN, GEORGE
W. HARRELL, EDWARD A. HARRIS, S. M. KINSINGER, JOE
LEON LANE, JEROME K. LEGGETT, MRS. RALPH B. LIVESAY,
WILLIAM C. MORRIS, JR., ROBERT L. NORRIS, JOHN W. NOR-
VILLE, EFFIE S. OGBURN, JOHNNY DALE PIGG, WILLIAM
ASHTON PROCTOR, HERBERT W. RAMSEY, DONALD R. ROSE,
ALLEN B. ROSS, NORRIS W. SMITH, ELBERT L. STOCKS,
JENNINGS B. TEAL, GERALD M. WARD, MOODY H. WARD,
GRAHAM A. WEST, AND MRS. W. G. WHITE v. THE TOWN OF
TARBORO, NORTH CAROLINA, E. L. ROBERSON, MAYOR, CARL
D. ANDREWS, A. B. BASS, REX BROWNING, GRAHAM HARRIS,
C. W. MAYO III, M. A. RAY, L. G. SHOOK, AND JOSEPH A. TAY-
LOR, MEMBERS OF THE TOWN COUNCIL OF THE TOWN OF TAR-
BORO, AND CLYDE L. BRITT, BUILDING INSPECTOR OF THE TOWN
OF TARBORO

— AND —

EASTERN REALTY AND INVESTMENT CORPORATION

No. 120

(Filed 16 June 1972)

1. Municipal Corporations § 30— comprehensive zoning ordinance —
amendment

A comprehensive zoning ordinance adopted by a municipality did
not constitute a contract between the municipality and property
owners which precluded the municipality from changing the boun-
daries, nor did it vest in any property owner the right that the
restrictions imposed by it upon his property or the property of others
should remain unaltered.

2. Municipal Corporations § 30— amendment of zoning ordinance

A comprehensive zoning ordinance may be amended or changed
when the action is authorized by the enabling statute and does not
contravene constitutional limitations on the zoning power; constitu-
tional limitations, however, forbid arbitrary and unduly discrimina-
tory interference with property rights in the exercise of such power.

3. Municipal Corporations § 30— amendment of zoning ordinance — pre-
sumption of validity

An amendment to a municipal zoning ordinance is presumed to
be valid and the burden is on the complaining party to show its
invalidity.

4. Municipal Corporations § 30— rezoning — Community Shopping Dis-
trict — validity

The rezoning of a 25-acre tract from a Residential District to a
Community Shopping District was not arbitrary and capricious and
did not constitute spot zoning, where the evidence showed that when
the city's comprehensive zoning ordinance was adopted, the property

Allgood v. Town of Tarboro

was outside the city limits in an area of comparatively undeveloped farm land, served only by a two-lane road, that when the property was rezoned it had been brought into the city limits, that the property lies at the intersection of a four-lane highway and U. S. Highway 64 Bypass, both heavily traveled highways, that the city has installed water and sewer service in the area, that 24 multi-family apartment units have been constructed on adjoining property, and that a zoning classification of Community Shopping District would have been justified when the zoning ordinance was originally adopted if the present conditions had existed at that time.

5. **Municipal Corporations § 30— rezoning — shopping center — market analysis**

Zoning ordinance requirement that the "owner" of property sought to be rezoned to a Community Shopping Center classification furnish a market analysis prepared by an independent market analyst was complied with when the original individual owner filed such an analysis in connection with his application for the rezoning, notwithstanding the property was conveyed to a corporation while the rezoning application was pending and the property was rezoned while owned by the corporation.

6. **Municipal Corporations § 30— zoning — shopping center — business permitted**

There is no merit in plaintiffs' contention that a proposed shopping center is "regional" in character and therefore beyond the scope and size permitted by a Community Shopping District zoning classification, the businesses carried on by the proposed tenants being within the uses permitted in a Community Shopping District, and there being no maximum area provided for such zoning classification.

7. **Municipal Corporations § 30— building permit — validity**

A building permit was not rendered invalid by the fact that the application listed the estimated cost of the building at $475,000 and the contractor named in the application had a license which limited it to construction not exceeding $300,000, where the permit was issued to the owner, not the building contractor, and the contractor obtained an unlimited contractor's license prior to beginning construction of the building.

APPEAL by plaintiffs from *Cowper, J.,* at the 25 October 1971 Civil Session of EDGECOMBE Superior Court, certified for initial appellate review by the Supreme Court under G.S. 7A-31(b)(1) upon motion of all parties.

Civil action to declare an amendment to the comprehensive Zoning Ordinance of the Town of Tarboro void and of no effect.

The complaint alleges three causes of action: (1) That the purported adoption of an amendment to the Zoning Ordinance of the Town of Tarboro by the Town Council on 11 January 1971, by which the 25-acre tract in question was rezoned from

RA-12, Residential District, to B-3, Community Shopping District, constituted "spot zoning"; and that this action was arbitrary, unreasonable, capricious, contrary to the Zoning Ordinance and pertinent laws, and therefore null and void; (2) that even if this zoning amendment is valid, the said B-3, Community Shopping District, does not permit the use for which the developer seeks to put the property; that the proposed use will be in violation of the zoning laws and will irreparably damage the value of the residential property of the plaintiffs and others in that vicinity; and (3) that the building permit issued by the Building Inspector for a building to be located upon this tract was not properly issued and therefore should be cancelled.

Defendants in their answers deny plaintiffs' allegations and allege that the amendment to the Zoning Ordinance is in all respects valid, that the proposed uses are permitted uses under the amendment, and that the building permit was properly issued.

The uncontradicted facts in this case show the following: On 14 January 1963 the Town Council of Tarboro adopted a comprehensive Zoning Ordinance. When this ordinance was passed, the 25-acre tract in question was outside the city limits but within one mile of the city, and this tract and property owned by some of the plaintiffs was placed in Planning District 17 and zoned RA-12, Residential District.

On 12 July 1968, H. W. Hull and his wife acquired this 25-acre tract and later that month filed a request to have three acres of the 25-acre tract rezoned from RA-12, Residential District, to B-3A, Neighborhood Shopping District. On 9 September 1968 the Zoning Ordinance was so amended by the Town Council.

On 14 July 1969, Hull filed a request to rezone the entire 25-acre tract to B-3, Community Shopping District. A public hearing was held on this request by the Town Council on 13 October 1969. At that time statements were made in favor of and in opposition to the proposed shopping center. The matter was then referred to the Planning Board and Zoning Commission of the Town of Tarboro and Its Environs (hereinafter referred to as the Planning Board). The Planning Board met on 24 November 1969, and on 1 December 1969 voted five to five

on the Hull request for a rezoning. The Town Council next met on 8 December 1969, heard arguments by proponents and opponents concerning the requested change, and then voted unanimously to rezone the entire 25-acre tract to B-3, Community Shopping District.

Some of the plaintiffs in the instant case brought suit on 2 March 1970 against the Town of Tarboro and others, alleging that the action of the Council was arbitrary, capricious, unreasonable, unlawful, and contrary to the Zoning Ordinance in various particulars.

On 17 September 1970, while that action was pending, Hull and his wife conveyed the 25-acre tract to defendant-intervenor, Eastern Realty and Investment Corporation. This first action was heard by Judge Walter W. Cohoon without a jury at the October-November 1970 Session of Edgecombe Superior Court, and after finding the facts Judge Cohoon concluded as a matter of law:

> "(1) The Amendment to the Zoning Ordinance enacted by the Tarboro Town Council on December 8th, 1969, affecting the property of Defendants Hull is not invalid for the reason that the Town Council acted arbitrarily and capriciously in adopting said Zoning Ordinance.

> "(2) That the Amendment to the Zoning Ordinance pertaining to the property of Defendants Hull which was enacted by the Town Council on December 8th, 1969, is invalid for the reason that the Notice of the Public Hearing was not properly published for the October 13th, 1969 public meeting of the Town Council, and that said action taken by the Town Council with respect thereto is invalid."

Judgment was entered in accordance with these conclusions on 25 November 1970, and no appeal was taken by any of the parties.

On 10 December 1970, Hull filed a new request to rezone the 25-acre tract to a B-3, Community Shopping District, in order that the proposed Park Hill Shopping Center might be constructed thereon. Eastern Realty and Investment Corporation, as the new owner of the land in question, joined Hull in this request.

The Town Council on 14 December 1970 referred the request to the Planning Board. At their 15 December 1970 meeting, the Planning Board recommended that the change be made and that the Town Council call a meeting for a public hearing on the matter. The Council held such hearing on 11 January 1971, and after hearing witnesses and attorneys both for and against the proposal, voted unanimously to rezone the entire tract to B-3, Community Shopping District.

Plaintiffs thereafter on 15 February 1971 brought this action against the Town of Tarboro, the Mayor, the members of the Town Council, and the Building Inspector. Eastern Realty and Investment Corporation filed a motion to intervene alleging that as the owner of the land in question it was a necessary party to the action and entitled to intervene by virtue of G.S. 1A-1, Rule 24(a)(2) of the Rules of Civil Procedure. This motion was allowed by Judge Tillery on 4 May 1971.

The case was heard before Judge Albert W. Cowper without a jury. After hearing the evidence and arguments of counsel, Judge Cowper found, among others, the following facts:

"5. . . . The Land Development Plan dated 1963 was the basic study which led to the adoption on January 14, 1963, by the Town Council of the Town of Tarboro of the Zoning Ordinance of the Town of Tarboro and Its Environs. This study or plan divided the Town of Tarboro and the area lying outside of but within one mile of the corporate limits into eighteen (18) planning districts. The property on which the Park Hill Shopping Center is proposed to be built was located in Planning District Seventeen (17) and all of said planning district was located outside of the corporate limits of the Town of Tarboro . . . . The existing land use in said planning district indicated by said Plan was a small residential subdivision located in the southeast corner of the Planning District on Howard Avenue (State Road 1211), a large area of undeveloped land extending westerly from the corporate limits of the Town of Tarboro to a larger residential subdivision known as Speight Forest and then another large area of essentially undeveloped land extending westerly to the western boundary of the Planning District.

"The Plan indicated that except for the small subdivision referred to above and the Speight Forest Sub-

Allgood v. Town of Tarboro

division, the District was served neither by public water or sewerage service. The Speight Forest Subdivision had public water service but no sewerage service and only the small residential subdivision located in the southeast corner of the District adjacent to the corporate limits of the Town of Tarboro had both public water and sewerage service. At the time of the study and preparation of the Plan, there existed no school, park or recreational facilities in the District. The only major thoroughfare in the District was Howard Avenue (State Road 1211) which was the southern boundary of the District . . . .

\*          \*          \*

"6. Some of the plaintiffs own and reside in homes located near or in the immediate neighborhood of the proposed location of the Shopping Center, but no plaintiff owns or resides in a home immediately adjacent to the location of the proposed Shopping Center.

\*          \*          \*

"21. The conditions existing in Planning District Seventeen, adjoining Planning Districts and the overall Planning Area of the Town of Tarboro at the time of the adoption of the zoning amendment in question on January 11, 1971, differ from those conditions which existed at the time of the 1963 Land Development Plan and the adoption on January 14, 1963 of the Zoning Ordinance of the Town of Tarboro in the following particulars:

"A. Western Boulevard (U. S. Highway No. 64 Bypass) had been constructed at its present location giving access to land on both sides thereof and a portion of this highway abuts the eastern line of the Shopping Center site and intersects Howard Avenue (State Road 1211) a portion of which abuts the southern line of the Shopping Center site. This boulevard or highway was and is capable of handling high volumes of traffic and had become and is one of the major thoroughfares in the Town of Tarboro. While the construction of this boulevard or highway was contemplated by the 1963 Land Development Plan, it was not known at that time when said boulevard or highway would be constructed and at what precise location;

"B. Howard Avenue (State Road 1211) had been widened from one lane of traffic in each direction to two lanes of traffic in each direction from its intersection with Western Boulevard (U. S. Highway 64 Bypass) in an easterly direction towards Main Street and becomes a five lane highway before intersecting Main Street. This avenue or road was and is capable of handling high volumes of traffic both into and from Western Boulevard (U. S. Highway No. 64 Bypass);

"C. The Shopping Center site, Speight Forest Subdivision and areas north and east of the Shopping Center site had been annexed into the corporate limits of the Town of Tarboro and the public water and sewer facilities had been extended to serve these and other surrounding areas;

"D. The Zoning Ordinance of the Town of Tarboro had been amended to provide for a B-3, Community Shopping District, and increasing the minimum size of such district;

"E. C. B. Martin Junior High School had been constructed and a Town Park developed north of the school property and on the east side of Western Boulevard (U. S. Highway No. 64 Bypass) . . . .

"F. Further development of Speight Forest Subdivision had occurred, apartment buildings had been constructed north of the Shopping Center Site, and in the general vicinity of the Shopping Center Site new subdivisions had been developed and old subdivisions had been expanded and property in the adjoining planning districts and in the general vicinity of the Shopping Center Site had been reclassified from residential to other purposes and a portion of the Shopping Center site had been reclassified as B-3A, Neighborhood Shopping District. . . . "

Based upon his findings of fact, Judge Cowper concluded as a matter of law that the Town Council had ample plausible basis for adopting the amendment in question; that the Council did not act arbitrarily or capriciously, but acted in good faith, reasonably and consistently with the comprehensive plan; that the rezoning did not constitute "spot zoning"; that the commer-

cial uses indicated by the final plan are consistent with the B-3, Community Shopping District, purposes; and that any irregularity which occurred in the issuance of Building Permit No. 5721 was of form rather than substance and was rendered moot by subsequent events.

Judge Cowper thereupon entered judgment for defendants and defendant-intervenor denying all relief prayed for by the plaintiffs and taxing plaintiffs with the costs.

From this judgment plaintiffs appealed to the Court of Appeals. On 4 April 1972, at the request of plaintiffs and defendants, this Court granted *certiorari* for appellate review by the Supreme Court without prior determination by the Court of Appeals.

*Bridgers & Horton by H. Vinson Bridgers; Claude V. Jones for plaintiff appellants.*

*Taylor, Brinson & Aycock by Z. Creighton Brinson for defendant appellees.*

*Weeks & Muse by T. Chandler Muse for defendant-intervenor appellee.*

MOORE, Justice.

Plaintiffs allege no procedural irregularity in the adoption of the 11 January 1971 amendment to the comprehensive Zoning Ordinance. They attack the amendment on the ground that the original classification of the property in 1963 as RA-12, Residential District, was sound; that there have been no changes in use or character in Planning District 17 sufficient to legally support rezoning the 25-acre tract to B-3, Community Shopping District; and that the attempt to do so by the Town Council on 11 January 1971 constituted "spot zoning" and was illegal, unauthorized by law, arbitrary, and void.

The original zoning power of the State reposes in the General Assembly. *Marren v. Gamble,* 237 N.C. 680, 75 S.E. 2d 880 (1953). The General Assembly has delegated to the legislative body of a municipality the power to adopt zoning regulations "for the purpose of promoting health, safety, morals or the general welfare of the community." G.S. 160-172; *Marren v. Gamble, supra.* The legislative body in this case is the Town

Council of Tarboro. *Keiger v. Board of Adjustment,* 278 N.C. 17, 178 S.E. 2d 616 (1971).

G.S. 160-172 provided in part:

"Grant of power.—For the purpose of promoting health, safety, morals or the general welfare of the community, the legislative body of cities and incorporated towns is hereby empowered to regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes. . . . "

G.S. 160-173 provided:

"Districts.—For any or all said purposes it may divide the municipality into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this article; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of building throughout each district, but the regulations in one district may differ from those in other districts."

G.S. 160-174 provided:

"Purposes in view.—Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."

(G.S. 160-172, G.S. 160-173, and G.S. 160-174, as amended in 1971, now appear as G.S. 160A-381, G.S. 160A-382, and G.S. 160A-383.)

Pursuant to these statutory provisions, the Town of Tarboro on 14 January 1963 adopted a comprehensive Zoning Ordinance setting up, among other districts, Planning District 17, in which the property in question is located. This property, as well as some of the other property in District 17 was zoned RA-12, Residential District, for single-family residences. Other property in District 17 was zoned RA-20, Residential and Agricultural. In an RA-20 zone, apartments, churches, sanatariums, fire stations, hospitals, kindergartens, and schools are permissible.

[1, 2]  The comprehensive ordinance did not constitute a contract between the Town and property owners which precluded the Town from changing the boundaries if at a later date it deemed a change to be desirable. Neither did this ordinance vest in any property owner the right that the restrictions imposed by it upon his property or the property of others should remain unaltered. Such regulations may be amended or changed when the action is authorized by the enabling statute and does not contravene constitutional limitations on the zoning power. *Blades v. City of Raleigh*, 280 N.C. 531, 187 S.E. 2d 35 (1972); *Allred v. City of Raleigh*, 277 N.C. 530, 178 S.E. 2d 432 (1971); *Zopfi v. City of Wilmington*, 273 N.C. 430, 160 S.E. 2d 325 (1968); *In re Markham*, 259 N.C. 566, 131 S.E. 2d 329 (1963). See 1 Yokley, *Zoning Law and Practice* § 7-3, p. 306 (3d Ed. 1965). Constitutional limitations, however, forbid arbitrary and unduly discriminatory interference with property rights in the exercise of such power. *Heaton v. City of Charlotte*, 277 N.C. 506, 178 S.E. 2d 352 (1971).

Plaintiffs do not attack the validity of the comprehensive ordinance. They only attack the 11 January 1971 amendment.

G.S. 160-176 provided for amendments: "Such regulations, restrictions and boundaries may from time to time be amended, supplemented, changed, modified or repealed," and G.S. 160-175 provided: "The legislative body of such municipality shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established and enforced, and from time to time amended, sup-

plemented or changed." (G.S. 160-176 and G.S. 160-175, as amended in 1971, now appear as G.S. 160A-385 and G.S. 160A-384).

The comprehensive Zoning Ordinance of Tarboro provides (Section 14.1) : "The Town Council may, on its own motion or upon motion or upon petition by any person within the zoning jurisdiction of the Town of Tarboro, after public notice and hearing, amend, supplement, change, modify or repeal the regulations herein established or the maps which are a part of this Ordinance, subject to the rules prescribed in Subsections 14.2 and 14.3 of this Section." Subsection 14.2 is not pertinent to this case. Subsection 14.3 provides that any such amendment shall be referred to the Planning Board for its recommendation and report prior to its adoption.

In the original Zoning Ordinance the Town Council found (Section 2.2) : "In the creation, by this ordinance, of the respective districts, the Town Council of the Town of Tarboro has given due and careful consideration to the peculiar suitability of each and every district for the particular regulations applied thereto, and the necessary, proper and comprehensive groupings and arrangements of various uses and densities of population in accordance with a well-considered comprehensive plan for the physical development of the community." And, with specific reference to a B-3, Community Shopping District, the Town Council states (Section 9.7(I)) : "The Town Council and the Planning Board believe the current Zoning Map to be valid and proof of a need for amending it shall be furnished by the proponents of a planned business center . . . . "

Plaintiffs contend that the property in question was properly placed in a residential zone under the original ordinance; that it was stipulated by the parties that this property is still suitable for residential purposes; that no need for a change has been shown; and that the Town Council acted arbitrarily and capriciously in changing the property from residential to commercial.

[3] The Planning Board, as required by the comprehensive Zoning Ordinance, examined the application of Hull and Eastern Realty and Investment Corporation to rezone the property in question and by a vote of eight to one recommended its approval. The Town Council, after giving the required notice, then held

a public hearing on 11 January 1971 on the proposed amend-
ment and voted unanimously to adopt it. There is a presumption
that the Town Council adopted this amendment in the proper
exercise of its police power. *Heaton v. City of Charlotte, supra;
Raleigh v. Morand,* 247 N.C. 363, 100 S.E. 2d 870 (1957).
And the plaintiffs who assert its invalidity have the burden of
proving its invalidity. *Helms v. Charlotte,* 255 N.C. 647, 122
S.E. 2d 817 (1961).

The facts in the case of *Zopfi v. City of Wilmington,* 273
N.C. 430, 160 S.E. 2d 325 (1968), were strikingly similar to
those in the instant case. In *Zopfi* the property involved was a
60-acre tract which was triangular in shape with the apex of
the triangle at the intersection of two heavily traveled highways.
The base of the triangle adjoined a residential subdivision.
The tip of the apex was zoned C-1, Commercial, but the rest of
the tract was zoned R-1AA, single-family residences only. The
owners sought to have the twenty-seven and one-half acres
nearest the apex zoned C-1, Commercial, for the construction
of a shopping center; to have the next twelve acres zoned R-3,
multiple-family apartment use; and to leave the remaining
acreage, lying along the base of the triangle, R-1AA. The City
Council so rezoned this property. The named plaintiffs, on
behalf of themselves and others, instituted an action seeking
a declaratory judgment to determine the validity of the
ordinances rezoning the property. The trial judge heard the
evidence, found the facts, and concluded as a matter of law
that the rezoning ordinances were duly adopted and valid,
and that in adopting them the City Council did not act arbi-
trarily or capriciously but in good faith and in a reasonable
manner consistent with its comprehensive zoning plan. The
plaintiffs appealed and this Court affirmed. Justice Lake,
speaking for the Court, stated:

" . . . (T)he amending ordinances before us do not
fall into the category of spot zoning. They apply to approxi-
mately forty acres constituting a triangle lying between
two heavily traveled highways and separated from the
property of the plaintiffs by a buffer strip of twenty
acres of the Morton-Cocke tract still zoned for single family
residences. There is ample support in the record for the
conclusion that the rezoning of the Morton-Cocke tract
was not arbitrary or discriminatory, may reasonably be

deemed related to the public welfare and is not inconsistent with the purpose for which the city is authorized by the statute to enact zoning regulations. The conclusion of the trial judge that the City Council, in adopting the amending ordinances, did not act arbitrarily or capriciously but acted in good faith, reasonably and consistent with its comprehensive zoning plan, is supported by the court's findings of fact, which, in turn, are supported by competent evidence in the record."

[4] In the present case, the uncontradicted evidence showed that in 1963 when the comprehensive ordinance was adopted, the property in question was outside the city limits in an area of comparatively undeveloped farm land, served only by Howard Avenue, a two-lane road. In 1971, when the amendment was adopted, the area had been brought into the city limits; a new school had been constructed; Howard Avenue had been four-laned to accommodate heavy traffic, and temporary U. S. Highway 64 Bypass constructed so that the 25 acres lay at the intersection of Howard Avenue and Highway 64 Bypass, both heavily traveled highways. The Town had installed water and sewer service in the area and 24 multi-family apartment units had been erected on the property adjoining the area in question.

This evidence was ample to support Judge Cowper's conclusion that the Town Council had reasonable grounds to believe that a shopping center on the 25 acres in question would, because of changed conditions, be in keeping with the comprehensive plan to encourage the most appropriate use of land throughout the city. It was also sufficient to support his conclusion that if the 1971 conditions *"had existed at the time of the 1963 Land Development Plan and the adoption of the Zoning Ordinance on January 14, 1963, the Town Council of the Town of Tarboro would have been justified at that time in zoning the area in question B-3, Community Shopping District,"* and the evidence further amply supported the court's conclusion that such amendment did not constitute "spot zoning." (Emphasis added.)

As stated in *Walker v. Elkin*, 254 N.C. 85, 118 S.E. 2d 1 (1961):

"The term 'spot zoning' has frequently been used by the courts and text writers when referring to changes

limited to small areas. Different conclusions have been reached on seemingly similar factual situations. We think the basic rule to determine the validity of an amending ordinance is the same rule used to determine the validity of the original ordinance. *Elizabeth City v. Aydlett*, 201 N.C. 602, 161 S.E. 78. The legislative body must act in good faith. It cannot act arbitrarily or capriciously. *If the conditions existing at the time of the proposed change are such as would have originally justified the proposed action, the legislative body has the power to act."* (Emphasis added.)

Changes which had taken place in and around Tarboro since 1963 were recognized and discussed in a study by the Community Planning Division of the North Carolina Department of Conservation and Development made for the Town of Tarboro in 1969. This study found that more property was needed in the Town of Tarboro for commercial purposes and that the west side of the Town held the greatest potential for commercial expansion. Concerning the property in question (which is located on the west side) the report stated:

"LOCATION:

From an urban planning standpoint, the proposed location of Park Hill Shopping Center is one of the best areas within Tarboro. The site is on relatively flat, virgin land, and would not require the destruction and removal of existing structures, and the related social imbalance therefrom.

"SINGLE OWNERSHIP:

The fact that Park Hill would be under the control of a single developer insures that such a development would have a unified architecture. This would not be the case under single tract ownership and development.

"ADEQUATE HIGHWAYS:

An examination of data on Temporary 64 Bypass and Howard Avenue indicates that at peak shopping hours these two streets would probably not be operating at more than 80 percent of their peak capacity."

Clearly, the changes which had occurred since 1963, together with the report of the Community Planning Division,

furnished the Town Council with reasonable grounds and a plausible basis for adopting the amendment rezoning the 25 acres in question. See *Yokley, supra,* p. 315.

It is not for the Superior Court or for this Court to review the action of the Town Council for the purpose of substituting the judgment of the Court for that of the Council concerning the wisdom of permitting the proposed use of the 25-acre tract. *Blades v. City of Raleigh, supra; Zopfi v. City of Wilmington, supra.* The courts will not interfere unless it appears that the Council acted arbitrarily and capriciously. The conclusion of the trial judge that the Town Council in adopting the amending ordinance did not act arbitrarily or capriciously but acted in good faith, reasonably, and consistent with the comprehensive zoning plan, is supported by the court's findings of fact which are in turn supported by competent evidence in the record and are binding upon us. *Zopfi v. City of Wilmington, supra.* The plaintiffs' exceptions thereto are overruled.

[5] Plaintiffs next contend that the defendant-intervenor did not furnish the market analysis as provided for by Section 9.7(I) of the Zoning Ordinance. This section provides "that before an amendment to the Zoning Map providing for any future B-3 Community Shopping District is granted that the owner or owners (including optionees) shall present a valid market analysis for consideration by the Planning Board, prepared and signed by a recognized and independent market analyst, which indicates the economic feasibility of the proposed development." Plaintiffs contend that the analysis presented to the Town Council was prepared for Hull prior to the time he conveyed the property in question to Eastern Realty and Investment Corporation, that it was not presented by the owner Eastern Realty and Investment Corporation, and that it was not prepared and signed by a recognized market analyst. These contentions are without merit. The petition for rezoning the property in question was filed by Hull on 14 July 1969. At that time he was the owner of the property. The market analysis prepared by Jerry Turner and Associates and John H. Voohrees was filed in connection with that application. Thereafter, at two public meetings of the Town Council the matter was fully debated, and the Town Council on 8 December 1969 unanimously adopted the ordinance making the zoning change. Judge Cohoon on 25 November 1970 declared this ordinance invalid solely because the notice of the public hearing

was not properly published. Hull then filed a new request for rezoning, pointing out that his petition for rezoning was still pending but that the land had been transferred to Eastern Realty and Investment Corporation, a corporation wholly owned by the Hull family. This request was signed by Hull and by the Corporation. There was no attempt to show that this market analysis was out of date or that there had been any changes in the original plans as submitted. It was stipulated that the analysis was prepared by Turner and Associates and Mr. Voohrees, and the evidence fully supported the court's finding that Turner was a recognized market analyst. These assignments are overruled.

[6] Plaintiffs further contend that the uses as described in the plan submitted by the defendant-intervenor are not uses permitted in a B-3, Community Shopping District, for the reasons that the proposed shopping center is "regional" in character and therefore beyond the scope and size permitted by the Zoning Ordinance in a B-3, Community Shopping District, and that the proposed use will irreparably damage the value of residential property of plaintiffs and others. The Development Plan of the developer submitted to and approved by the Planning Board indicates that the major tenants of the shopping center would be Belk-Tyler Department Store, which would also operate a separate Tire, Battery and Accessory Store; G. C. Murphy Department Store, which would also operate a restaurant; A & P Food Store, Peoples Drug Store, and Edgecombe Bank and Trust Company, together with miscellaneous small shops offering a variety of retail goods and services. The type of business carried on by each of these proposed tenants is within the permitted uses provided for in a B-3, Community Shopping District, by the Zoning Ordinance, which uses are, among others, banks, eating and drinking establishments, filling stations, food stores, and stores or shops for the conduct of the retail businesses of drugs, dry goods, household goods, sporting goods, and variety stores. The B-3, Community Shopping District, classification provides for a minimum area of three acres, but does not provide for any maximum area. The Zoning Ordinance does not provide for a "regional" shopping center. The Town Council, in the exercise of its legislative functions and power, properly determined from the evidence before it on 11 January 1971 that the proposed development Plan submitted by the owner of the property

in question was within and would accomplish the general purposes and objectives of a B-3, Community Shopping District. The evidence does not disclose any pecuniary loss by plaintiffs, and when as here zoning regulations are adopted in the proper exercise of the police power, any resultant loss is a misfortune which they must suffer as members of society. *Armstrong v. McInnis,* 264 N.C. 616, 142 S.E. 2d 670 (1965) ; *Schloss v. Jamison,* 262 N.C. 108, 136 S.E. 2d 691 (1964) ; *In re Markham, supra; Kinney v. Sutton,* 230 N.C. 404, 53 S.E. 2d 306 (1949).

[7]    Plaintiffs finally contend that the building permit issued to defendant-intervenor is invalid. The permit in question was issued to the defendant-intervenor as owner and not as a licensed contractor. The application for the permit listed Commercial Builders as the name of the contractor, and gave an estimated cost of $475,000 for a Belk-Tyler Department Store. At the time of the issuance of the permit, Commercial Builders had a contractor's license which limited it to construction not exceeding $300,000. Prior to beginning construction on the Belk-Tyler building, Commercial Builders applied for and obtained an unlimited contractor's license and paid the requisite fees and taxes to the State of North Carolina and the Town of Tarboro. The trial judge on competent evidence found these to be the facts and concluded that the building permit was in all respects valid. We agree.

We have carefully considered other assignments of error brought forward by the plaintiffs in their brief. We find no reversible error. For the reasons stated, the judgment of the Superior Court is affirmed.

Affirmed.