JAMES F. TAYLOR, ANNE S. TAYLOR, JASPER W. DUNN III, LINDA L. DUNN, RICHARD R. PATTY, AND NELL H. PATTY, HUBERT O. WHITAKER AND THERESA G. WHITAKER, HERBERT J. DAVIS AND CAROLYN DAVIS v. THE CITY OF RALEIGH, NORTH CAROLINA; TOM BRADSHAW, JR., MAYOR AND MEMBERS OF THE CITY COUNCIL OF THE CITY OF RALEIGH, NORTH CAROLINA; AND CLARENCE E. LIGHTNER, JESSE O. SANDERSON, ROBERT W. SHOFFNER, ALTON L. STRICKLAND, MICHAEL BOYD, AND ELIZABETH REID, MEMBERS OF THE CITY COUNCIL OF THE CITY OF RALEIGH, NORTH CAROLINA; AND W. E. MANGUM

No. 72

(Filed 1 September 1976)

1. **Municipal Corporations § 2— standing to attack annexation ordinance**

     Private citizens had no standing to seek judicial review of a municipal ordinance annexing a noncontiguous area.

2. **Declaratory Judgment Act § 1; Municipal Corporations § 30— validity of zoning ordinance — declaratory judgment**

     The validity of a municipal zoning ordinance, when directly and necessarily involved, may be determined in a properly constituted

Taylor v. City of Raleigh

action under the Declaratory Judgment Act; however, this may be done only when challenged by a person who has a specific personal and legal interest in the subject matter affected by the zoning ordinance and who is directly and adversely affected thereby.

3. **Municipal Corporations § 30— standing to attack rezoning ordinance**

Plaintiffs' standing to attack a rezoning ordinance must be considered and determined with reference to whether the rezoning ordinance itself directly and adversely affects them.

4. **Equity § 2— laches — motion for summary judgment**

The defense of laches is frequently raised by summary judgment motion; when it so raised the plaintiff is permitted to counter by showing a justification for the delay, and whenever this assertion raises triable issues, defendant's motion will not be granted.

5. **Equity § 2— laches — burden of proof**

Laches is an affirmative defense which must be pleaded, and the burden of proof is on the party who pleads it.

6. **Municipal Corporations § 30; Declaratory Judgment Act § 1— attack on zoning ordinance — declaratory judgment action**

A property owner having standing to attack a zoning ordinance or amendment thereof may do so in an action under G.S. 1-254 for a declaratory judgment.

7. **Equity § 2; Declaratory Judgment Act § 1— laches — declaratory judgment action**

The equitable doctrine of laches is applicable in an action for a declaratory judgment.

8. **Municipal Corporations § 30— petition for rezoning — notice of plans for multi-family units**

A petition to a city's governing body to reclassify an area zoned for single-family dwellings so as to permit the construction of multi-family dwellings or apartment houses is notice to all interested persons that the applicant, if his petition is allowed, has present plans to construct multi-family units in the rezoned area.

9. **Municipal Corporations § 30; Equity § 2— delay in attack on rezoning ordinance — laches**

A delay in seeking a determinaton of the invalidity of a properly enacted zoning ordinance until after expenditures are incurred in reliance upon the ordinance, or an amendment thereto, may constitute laches or inequitable conduct barring judicial relief.

10. **Municipal Corporations § 30; Equity § 2— laches — failure to challenge rezoning ordinance — no knowledge of necessity for easements**

The fact that plaintiffs were unaware at the time a rezoning ordinance was enacted that an easement would be condemned across their properties for the installation of water and sewer lines to serve rezoned property constitutes no reasonable excuse for the plaintiffs' failure to assert their right, if any, to challenge the rezoning ordinance.

**11. Rules of Civil Procedure § 56— summary judgment based on defendant's own affidavit**

In an action to invalidate a rezoning ordinance, summary judgment was properly entered for defendants on the basis of the defendant landowner's own affidavit where there were only latent doubts as to the credibility of the affiant and plaintiffs did not challenge the statements in the affidavit as required by G.S. 1A-1, Rule 56, §§ (e) or (f).

**12. Municipal Corporations § 30; Equity § 2— attack on rezoning ordinance — laches**

Plaintiffs were barred by laches from attacking a rezoning ordinance where their action to invalidate the ordinance was not brought until two years and twenty-two days after the ordinance was adopted and defendant landowner had spent in reliance on the ordinance $23,267.56 for architectural fees for design of an apartment development to be placed on the rezoned land, engineering fees for the design of a sewer line to serve the land, and related attorney fees.

Justices COPELAND and EXUM did not participate in the consideration or decision of this case.

ON *certiorari* to review the decision of the Court of Appeals, 22 N.C. App. 259, 206 S.E. 2d 401 (1974), affirming the summary judgment entered in favor of defendants by *Hobgood, J.,* on 13 August 1973, in the Superior Court of WAKE County, docketed and argued at the Fall Term 1974 as Case No. 82.

Plaintiffs instituted this action on 12 January 1973 for a judgment declaring "unlawful, invalid and void" two ordinances adopted by the City Council of Raleigh: "Ordinance No. (1970) 22 ZC 91," adopted 21 December 1970, hereafter called the Rezoning Ordinance, and "Ordinance No. (1972) 211," adopted 20 March 1972, hereafter called the Annexation Ordinance. Plaintiffs also seek to enjoin defendant City of Raleigh from proceeding to condemn easements across the properties of plaintiffs for the purpose of constructing a sewer outfall to property of defendant W. E. Mangum.

The properties of plaintiffs and an 85-acre tract of Mangum land are beyond, but within a mile of, the corporate limits of Raleigh. Mangum's 85-acre tract extends north from the intersection of Duraleigh Road and Edwards Mill Road. It is an extensive area previously zoned R-4 by Raleigh's comprehensive zoning ordinance. Except for the dwellings of Mangum and of Mangum's sister, the 85-acre tract is open land. Plaintiffs' properties are in the same zoning area. The structures thereon are single-family dwellings, constructed in compliance with R-4

regulations. All are located in the Laurel Hills Subdivision, which lies generally to the north of Mangum's 85-acre tract.

The Rezoning Ordinance changed the classification of 39.89 acres of Mangum's 85-acre tract from R-4 to R-6, a reclassification which would permit Mangum to construct a proposed 200-unit apartment development. The 39.89 acres rezoned constitute the southern portion of Mangum's 85-acre tract and the portion farthest from plaintiffs' properties. The northern portion remains in the R-4 classification.

The Annexation Ordinance annexed the 39.89 acres previously rezoned from R-4 to R-6. No other property was annexed.

On 2 January 1973 the City Council of Raleigh adopted resolutions authorizing and directing the institution of the following separate condemnation proceedings by the City of Raleigh: one against James F. Taylor and wife, Anne S. Taylor; one against Jasper W. Dunn III and wife, Linda L. Dunn; one against Richard R. Patty and wife, Nell H. Patty; one against Hubert O. Whitaker and wife, Theresa G. Whitaker; and one against Herbert J. Davis and wife, Carolyn Davis. These five proceedings were instituted in February and March of 1973, which was one to two months after the commencement of this action. The respondents therein collectively are the plaintiffs in this action.

In each condemnation proceeding the City of Raleigh seeks to acquire an easement for the project designated "Laurel Hills Sewer Outfall." In each, the easement sought is over that part of the lands of respondents, "lying within the boundaries of the utility easements, shown as parcel(s) [designating the parcel number(s) applicable to the respondents in each case] on a map entitled 'Sanitary Sewer Easement for W. E. Mangum, Raleigh, North Carolina,' dated June 1972, prepared by Rose, Pridgen & Freeman Engineering Associates, Inc. . . . "

In each condemnation proceeding, pleadings were filed and commissioners were appointed. The commissioners reported their findings in respect of the compensation to which the respondents were entitled. Defendants excepted to the orders appointing commissioners and to the commissioners' reports. The record before us shows no further activity in the condemnation proceedings. Presumably, they lie dormant pending decision on this appeal.

In attacking the Rezoning Ordinance, plaintiffs, in summary alleged: The Rezoning Ordinance is arbitrary and capricious. It is not based on any rational considerations of the general welfare of the plaintiffs or the citizens of the City of Raleigh, but was enacted solely to accommodate Mangum. It is contrary to the comprehensive zoning and land use plan of the City of Raleigh in that: (1) It "creates a density incompatible with that of the surrounding property"; (2) it constitutes unlawful spot zoning, "the rezoning of a single tract in the midst of a larger area otherwise zoned"; and (3) it constitutes unlawful contract zoning, "because it was enacted in reliance upon the representations of the defendant W. E. Mangum as to the type project he would build and maintain on the subject property if it were rezoned."

In attacking the Annexation Ordinance, plaintiffs, in summary, alleged: The Annexation Ordinance is arbitrary and capricious. It is not based on any rational considerations of the general health, safety or welfare of the plaintiffs or of the citizens of the City of Raleigh, but was enacted solely to accommodate Mangum. The record fails to show "that or how the City of Raleigh would be able to provide the same services to the annexed area, territory or subdivision in the same manner in which other areas within the municipal boundaries . . . are served." It was enacted "in reliance upon vague and indefinite plans and proposals for water and sewer service to the property when no plans had been made for the acquisition of the right of way for said sewer line. . . . "

Separate answers were filed by (1) defendant Mangum, and (2) by defendant City of Raleigh, its mayor, and the members of its City Council, hereafter referred to as the answer of the City of Raleigh. All motions and contentions referred to as having been made by defendant City of Raleigh should also be understood as having been made by its mayor and the members of its City Council. In their answers defendants asserted the validity of both ordinances. As further defenses, and as the basis for motions to dismiss under North Carolina Rule of Civil Procedure 12(b)(6), defendants alleged (1) that plaintiffs' action for a declaratory judgment declaring the Rezoning Ordinance void was not filed until two years and twenty-two days after its adoption and is barred by "all applicable" statutes of limitations and by laches; (2) that plaintiffs are not residents of the City of Raleigh or of the area annexed by the Annexation Ordi-

nance and do not have standing to attack that ordinance; and (3) that plaintiffs failed to file a petition within thirty (30) days to review the Annexation Ordinance as required by G.S. 160-453.18.

Plaintiffs' petitions for temporary orders to restrain *the institution* of condemnation proceedings and, later, *the further prosecution* thereof, were denied.

Defendants' motions to dismiss the present action on the grounds alleged in their further defenses were denied by Judge Hobgood by order dated 21 March 1973. Prior to the entry of this order, to wit, on 19 January 1973, defendant Mangum had filed his afidavit dated 18 January 1973, identified as Exhibit G and referred to below.

On 6 February 1973 defendant Mangum filed a motion for summary judgment "on the pleadings, on the ground that the undisputed facts appearing therein entitle the defendant to such summary judgment as a matter of law." This motion was denied by Judge Hobgood on 21 March 1973.

The case on appeal states that a motion for summary judgment, *filed by plaintiffs* on 18 April 1973, came on for hearing before Judge Hobgood on 12 June 1973; that it was stipulated at that hearing that *"there was no genuine issue as to any material fact in regard to said motion";* and that, at that hearing, plaintiffs submitted their Exhibits 4 through 33 in support of their motion and defendants submitted their Exhibits I and J in opposition thereto. (Our italics.)

Plaintiffs' Exhibits 4 through 33 are records, inclusive of petitions and excerpts from minutes of the City Council and of the City Planning Commission, up to and including the adoption of the Rezoning Ordinance and of the Annexation Ordinance.

Exhibit I is an affidavit of Harry W. Moser, Jr., architect, to the effect that, pursuant to his employment by Mangum, he had prepared a site plan for the entire 85-acre tract. This plan was presented to the City Council on 11 November 1970 in support of Mangum's application to rezone the area from R-4 to R-6; and that, after passage of the ordinance rezoning only 39.89 acres of the 85-acre tract, he had prepared a site plan and architectural drawings for the reduced area.

Defendants' Exhibit J is a portion of the zoning map of the City of Raleigh on which the 39.89 acres rezoned and annexed are shown. It does not show (1) the boundaries of the 85-acre tract; (2) the location of plaintiffs' properties; (3) the corporate limits of Raleigh; or (4) the location of Crabtree Creek. Notations thereon purport to show when and how certain of the areas thereon were zoned or rezoned. There was no evidence purporting to explain Exhibit J.

By order dated 16 July 1973 Judge Hobgood denied plaintiffs' motion for summary judgment.

On 16 July 1973 defendant City of Raleigh filed a motion that summary judgment be entered for defendants on the ground that the undisputed facts entitle defendants to such judgment as a matter of law. When this motion came on for hearing on 1 August 1973, plaintiffs submitted their Exhibits 34 through 48, consisting of copies of the documents in the five condemnation proceedings and of the official minutes, beginning with minutes of a meeting of the City Council held 16 October 1972, preceding and relating to the institution of the five condemnation proceedings. The parties consented "to the court's reaching its decision and entering judgment out of term."

The judgment entered by Judge Hobgood on 13 August 1973 granted defendants' motion *for summary judgment.*

The judgment recites that the cause came on for hearing and was heard "upon the motions of *all* parties for summary judgment." (Our italics.) The judgment further recites that the court had before it the following documents: "The complaint and attached exhibits; the answer of the City of Raleigh, the Mayor, and the Members of the City Council of the City of Raleigh; the answer of W. E. Mangum; the affidavits of W. E. Mangum, Charles Aldridge, Mitchell Duke, Harry Moser, Jasper W. Dunn III, Richard R. Patty, Anne S. Taylor, Herbert J. Davis, and Hubert O. Whitaker; pertinent sections of the Raleigh City Code; and copies of the record of the City of Raleigh reflecting the deliberations of the Raleigh City Council and other administrative and legislative bodies which considered the ordinances in question and the proposed condemnation of a utility easement across the property of plaintiffs."

The judgment also recites: "It appearing to the Court, and the parties having agreed, that there is no genuine issue as to

any material fact and that the pleadings raise only questions of law." Immediately after the quoted recital, the following appears: "The Court, having considered these matters, makes the following FINDINGS OF FACT." Thereafter, in twenty-five (25) numbered paragraphs, appear what the court refers to as findings of fact. Based upon these "FINDINGS OF FACT," Judge Hobgood set forth in thirteen numbered paragraphs of his CONCLUSIONS OF LAW.

Based upon his FINDINGS OF FACT and CONCLUSIONS OF LAW, Judge Hobgood adjudged valid the Rezoning Ordinance and the Annexation Ordinance; denied the relief sought by plaintiffs; and taxed plaintiffs with the costs.

The record discloses that plaintiffs excepted to the judgment granting summary judgment in favor of defendants. Plaintiffs' exceptions Nos. 1, 2, and 3, addressed to the recitals in the judgment, are (1) to the making by the trial court of findings of fact and conclusions of law; (2) to the second quoted recital "on the grounds that plaintiffs have not agreed that there are no genuine issues as to any material fact in regard to the motions for summary judgment filed by the defendants"; and (3) "on the grounds that there are genuine issues as to material facts in regard to the motions for summary judgment filed by defendants." Plaintiffs' exceptions 4 through 21 are addressed to portions of the judgment denominated "FINDINGS OF FACT."

Plaintiffs appealed from the judgment, setting forth assignments of error based on exceptions referred to above.

Defendants also set forth assignments of error based on their exceptions to the trial court's failure to allow their motion to dismiss.

The Court of Appeals did not review Judge Hobgood's decision and judgment to the effect that the Rezoning and Annexation Ordinances were valid. Rather it based its decision upon defendants' assignments of error based on their exceptions to the order of Judge Hobgood entered 21 March 1973, in which he overruled *defendants' motions to dismiss*. It held plaintiffs' action for a judgment declaring the Rezoning Ordinance void was barred by laches. It further held that plaintiffs failed to show they had standing to attack the validity of the Annexation Ordinance. On these grounds the Court of Appeals found

---

Taylor v. City of Raleigh

---

"No Error." This Court allowed plaintiffs' petition for *certiorari.* 285 N.C. 669, 207 S.E. 2d 765 (1974).

*Barringer and Howard by Thomas L. Barringer for plaintiff appellants.*

*Hatch, Little, Bunn, Jones, Few & Berry by David H. Permar for defendant W. E. Mangum, appellee.*

*Broxie J. Nelson, City Attorney, and Clyde Holt III, Associate City Attorney, for defendant City of Raleigh, appellee.*

SHARP, Chief Justice.

Plaintiffs are the owners of land through which the City of Raleigh proposes to construct a sewer line from its primary corporate limits to the noncontiguous 39.89-acre Mangum "satellite" tract annexed in 1972. In this action for a declaratory judgment they seek to invalidate the ordinance annexing the property and the 1970 rezoning ordinance, which changed the property's classification from R-4 to R-6. This change authorized the construction of "Two (2) family dwellings, multi-family dwelling, townhouses, or apartment houses, each on its own lot, fronting on a public street, provided no dwelling shall contain more than eight (8) units on any one story, except as provided in section 24-42.1 [special exceptions]." The construction of an apartment house in the area, however, is impossible unless the City of Raleigh can extend its water and sewer system to the noncontiguous annexation.

Subsequent to the adoption of the two ordinances challenged by plaintiffs the City of Raleigh brought five separate condemnation proceedings against these plaintiffs seeking easements over their properties for the proposed sewer system. The relief which plaintiffs seek in this present action is a permanent injunction enjoining the City of Raleigh from condemning any of their property for the sewer system. The five condemnation proceedings, therefore, are germane in the present action only to the extent that the City's right to condemn may depend upon the validity of the annexation and rezoning ordinances. It is to a discussion of these ordinances and plaintiffs' standing to attack them that we now turn.

ANNEXATION ORDINANCE

The annexation ordinance, which became effective 26 June 1972, was enacted on 20 March 1972, under the authority con-

Taylor v. City of Raleigh

ferred by Ch. 989, N. C. Sess. Laws (1967) entitled, "AN ACT TO PROVIDE FOR VOLUNTARY ANNEXATION BY THE CITY OF RALEIGH OF AREAS, TERRITORIES OR SUBDIVISIONS NOT CONTIGUOUS TO THE MUNICIPAL BOUNDARIES OF THE CITY OF RALEIGH." The ordinance was adopted pursuant to petition of defendant Mangum, *the sole owner* of the annexed 39.89 acres.

Section 5 of Chapter 989 furnishes the only means of contesting the annexation of noncontiguous property authorized by that enactment. Section 5 provides that if, before the effective date of the annexation, a petition is filed by at least ten percent of the qualified voters of the City requesting a referendum on the question of annexing the area described in the petition, an election shall be conducted in accordance with the provisions of sections 6 and 7 of the Chapter. If a majority of the votes cast at such an election shall be "for extension," the area shall become a noncontiguous portion of the City.

At this point we note that by Ch. 1173, N. C. Sess. Laws (1973), effective 1 July 1974 and codified as G.S. 160A-58 through G.S. 160A-58.6 (Cum. Supp., 1975), the General Assembly empowered all municipalities (except those not qualified to receive gasoline tax allocations under G.S. 136-41.2) to annex satellite areas upon the petition of all the owners in the proposed satellite annexation. G.S. 160A-58.2 provides that those entitled to be heard "on the questions of the sufficiency of the petition and the desirability of the annexation" are "any person residing in or owning property in the area proposed for annexation and any resident of the annexing city." This enactment does not authorize any other persons to protest a proposed annexation of noncontiguous territory or to challenge the ordinance when it is passed.

Upon the institution of an action to challenge the validity of an annexation ordinance, one of the court's first concerns is whether the plaintiffs are authorized to maintain their action. In *Gaskill v. Costlow,* 270 N.C. 686, 155 S.E. 2d 148 (1967), this Court recognized and applied the general rule that unless an annexation ordinance be absolutely void *(e.g.,* on the ground of lack of legislative authority for its enactment), in the absence of specific statutory authority to do so, private individuals may not attack, collaterally or directly, the validity of proceedings extending the corporate limits of a municipality. Such an action is to be prosecuted only by the State through its proper

officers. Annot., "Capacity to Attack the Fixing or Extension of Municipal Limits or Boundary," 13 A.L.R. 2d 1279 (1950); Annot., Proper Remedy or Procedure for Attacking Legality of Proceedings, Annexing Territory to Municipal Corporations," 18 A.L.R. 2d 1255, 1258-59 (1951); 56 Am. Jur. 2d *Municipal Corporations* §§ 36, 72 (1971). However, if the annexation is neither authorized by law nor made under the color of law it is void and is subject to attack by anyone having a sufficient personal interest in the litigation. Annot., 13 A.L.R. 2d at 1292.

[1] The legislature, of course, may authorize designated persons to contest the validity of annexation ordinances, but when "the courts are vested with jurisdiction to review annexation proceedings, the scope of judicial review is limited by statute." *In re Annexation Ordinance,* 284 N.C. 442, 452, 202 S.E. 2d 143, 149 (1974). Our legislature has authorized judicial review with reference to the annexation of "adjacent or contiguous" areas. G.S. 160A-38 and G.S. 160A-50 (Cum. Supp. 1975). As heretofore noted, however, neither in the local act of 1967 empowering the City of Raleigh to annex noncontiguous territory nor in the 1973 enactment which extended that right to all the State's municipalities did the legislature authorize private citizens to seek judicial review of the annexation. It is clear, therefore, that the plaintiffs in this action lack standing to contest the annexation ordinance. We also advert to the fact that plaintiffs own no property in the annexed noncontiguous area. Nor, so far as the record discloses, do they own any property within the primary corporate limits of Raleigh. Their properties and residences lie in between the two areas.

The Court of Appeals correctly held that plaintiffs have no standing to attack the annexation ordinance.

REZONING ORDINANCE

At the outset of our discussion of the rezoning ordinance it is appropriate to examine the statutory authority under which Raleigh exercises the right to zone and rezone. The General Assembly has delegated to "the legislative body" of cities and incorporated towns the power to adopt zoning regulations and from time to time, to amend or repeal such regulations. *In re O'Neal,* 243 N.C. 714, 92 S.E. 2d 189 (1956); *Marren v. Gamble,* 237 N.C. 680, 75 S.E. 2d 880 (1953).

When Chapter 540 of the Session Laws of 1949 (hereafter called the 1949 Raleigh Act), was enacted, the statewide enabling legislation from which municipalities derive the general power to adopt zoning regulations made no provision for zoning beyond the municipal corporate limits. Article 14, Chapter 160, §§ 172 *et seq.*, N. C. Gen Stat., Volume 3 (1943) ; *State v. Owen*, 242 N.C. 525, 88 S.E. 2d 832 (1955). After enactment of the 1949 Raleigh Act, the statewide legislation was amended to enable municipalities to exercise zoning powers "not only within its corporate limits but also within the territory extending for a distance of one mile beyond such limits in all directions." N. C. Sess. Laws, Ch. 1204, Sec. 1 (1959), now codified as N.C.G.S. § 160A-360 (1972).

The 1949 Raleigh Act authorized the governing body of the City of Raleigh to adopt zoning ordinances "within the territory and community beyond and surrounding the corporate boundaries of the City of Raleigh, as now or hereafter fixed, for a distance of one mile of and beyond such corporate boundaries in all directions." Plaintiffs do not challenge the authority of the City Council to adopt zoning regulations and, from time to time, to amend or repeal such regulations, with reference to such property. Nor do they assert any failure to comply with prescribed procedures for the adoption of a valid rezoning ordinance. They attack the rezoning ordinance on the ground the decision of the City Council constituted an arbitrary and discriminatory exercise of its legislative power.

In considering whether plaintiffs (1) have standing to attack the rezoning ordinance, and (2) whether their action is barred by laches, as held by the Court of Appeals, a review of the documentary evidence submitted by plaintiffs is appropriate.

The copies of the records in the five condemnation proceedings show the addresses of plaintiffs to be as follows: (1) Taylor—4217 Laurel Ridge Drive; (2) Dunn—4505 Boxwood Drive; (3) Patty—4304 Azalea Drive; (4) Whitaker—4101 Balsam Drive; (5) Davis—4212 Azalea Drive. Laurel Ridge Road, Boxwood Drive, and Balsam Drive are shown as streets on the portion of the zoning map identified as defendants' Exhibit J. No street identified as Azalea Drive is shown thereon.

According to the scale of Exhibit J, the distance from the northern boundary of the rezoned 39.89 acres to Boxwood Drive is less than the distance from said northern boundary to any of

the other streets referred to above. By shortest direct line, the distance from said northern boundary to Boxwood Drive is 2800 feet; it is 2600 feet to the rear of lots on the south side of Boxwood Drive.

The affidavit of plaintiff Jasper W. Dunn III states that the house and lot at 4505 Boxwood Drive, owned by himself and his wife, "are located approximately one-half mile from the property of W. E. Mangum." It is unclear whether his reference is to the rezoned 39.89 acres or to the portion of the Mangum property closest to him, namely, the 45 acres still rezoned R-4.

[2] We first consider whether these plaintiffs have standing to attack the rezoning ordinance. Of course, the validity of a municipal zoning ordinance, when directly and necessarily involved, may be determined in a properly constituted action under our Declaratory Judgment Act. However, this may be done only when challenged by a person who has a specific personal and legal interest in the subject matter affected by the zoning ordinance and who is directly and adversely affected thereby. 101 C.J.S. *Zoning* § 321 (1958) ; *Josephson v. Planning Board of Stamford,* 151 Conn. 489, 199 A. 2d 690 (1964). *Compare Greensboro v. Wall,* 247 N.C. 516, 519-20, 101 S.E. 2d 413, 416-17 (1958).

The undisputed evidence discloses that the impact of the rezoning ordinance on any of the plaintiffs was minimal. In this regard we note that none of the owners of property adjoining the 85-acre tract, or across Duraleigh and Edwards Mill Roads from it, protested Mangum's proposal for rezoning. The protest made in behalf of property owners in the Laurel Hills and other subdivisions was directed to the proposed rezoning of the entire 85-acre tract. The City Council, however, restricted the rezoning to 39.89 acres of the southern part, leaving a buffer zone of 45 acres in the R-4 classification between plaintiffs and the rezoned area. Thereafter, the minutes disclose no further protests. The property of plaintiffs Dunn on Boxwood Drive is one-half mile or more from the northern (closest) boundary of the rezoned 39.89 acres and the property of the other plaintiffs is farther from said northern boundary. Prior to the bringing of this action neither plantiffs nor any of those who protested the rezoning of the entire 85-acre tract had attacked, by protest or by lawsuit, the rezoning of the 39.89 acres farthest from them.

Taylor v. City of Raleigh

Furthermore we note that the portion of the Raleigh Code relating to zoning, Ch. 24, § 24-7 thereof, then provided that the following uses, among others, were permitted in a Residential 4 District: "(b) A dwelling, on its own lot, fronting on a public street, consisting of a single-family dwelling unit and one utility apartment; provided that the utility apartment shall have no more gross floor area than one-third (1/3) of the gross floor area of the single-family dwelling unit. *Townhouse developments and unit-ownership developments when approved as planned unit developments of fifty (50) acres or more under* Chapter 20 of this Code." (Our italics.) Thus, the 1970 amendment to the zoning ordinance did not, for the first time, authorize multi-family dwellings in the area; it merely increased the permissible types and units of dwellings.

[3] This action was instituted two years and twenty-two days after the rezoning ordinance was adopted. The persons who attack it now do so as a means of resisting the condemnation of easements over their properties for the installation of water and sewer lines. Plaintiffs' standing to attack the rezoning ordinance must be considered and determined with reference to whether the rezoning ordinance itself directly and adversely affects them.

On this record we would be unwilling to hold that plaintiffs have established that they are persons aggrieved by the rezoning ordinance. *See* 3 R. Anderson, American Law of Zoning § 21.10 (1968). However, in the circumstances here involved, we do not base decision solely on the ground plaintiffs are not sufficiently directly and adversely affected by the rezoning ordinance to entitle them to attack it. Rather, we treat plaintiffs' tenuous standing as a circumstance in considering whether plaintiffs' belated attack on the rezoning ordinance is barred by laches.

LACHES

In determining whether plaintiffs' suit is, at this stage of the proceeding, barred by the doctrine of laches, we face a three-fold question: (1) Do the pleadings, affidavits and exhibits show any dispute as to the facts upon which defendants rely to show laches on the part of plaintiffs? (2) If not, do the undisputed facts, if true, establish plaintiffs' laches? (3) If so, is it appropriate that defendants' motion for summary judgment, made under G.S. 1A-1, Rule 56(b), be granted?

[4] The defense of laches is one "frequently raised by summary judgment motion." When it is so raised the plaintiff, of course, "is permitted to counter by showing a justification for the delay, and whenever this assertion raises triable issues, defendant's motion will not be granted." 10 C. Wright & A. Miller, Federal Practice and Procedure § 2734 (1973). *See also* 6 J. Moore, Federal Practice § 56.17[38] (1976). However, "an adverse party [plaintiffs here] may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule [Rule 56], must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Rule 56(e).

[5] We are mindful that laches is an affirmative defense. It must be pleaded and the burden of proof is on the party who pleads it. *Poultry Co. v. Oil Co.,* 272 N.C. 16, 22, 157 S.E. 2d 693, 698 (1967), and cases cited. "In equity, where lapse of time has resulted in some change in the condition of the property or in the relations of the parties which would make it unjust to permit the prosecution of the claim, the doctrine of laches will be applied. Hence, what delay will constitute laches depends upon the facts and circumstances of each case. Whenever the delay is mere neglect to seek a known remedy or to assert a known right, which the defendant has denied, and is without reasonable excuse, the courts are strongly inclined to treat it as fatal to the plaintiff's remedy in equity, even though much less than the statutory period of limitations, if an injury would otherwise be done to the defendant by reason of the plaintiff's delay." *Teachey v. Gurley,* 214 N.C. 288, 294, 199 S.E. 83, 88 (1938).

[6] A property owner having standing to attack a zoning ordinance or amendment thereof may do so in an action under G.S. 1-254 (1969) for a declaratory judgment. *Blades v. City of Raleigh,* 280 N.C. 531, 187 S.E. 2d 35 (1972) ; *Allred v. City of Raleigh,* 277 N.C. 530, 178 S.E. 2d 432 (1971) ; *Armstrong v. McInnis,* 264 N.C. 616, 142 S.E. 2d 670 (1965).

[7] "Since proceedings for declaratory relief have much in common with equitable proceedings, the equitable doctrine of laches has been applied in such proceedings. But the mere passage or lapse of time is insufficient to support a finding of laches; for the doctrine of laches to be sustained, the delay

must be shown to be unreasonable and must have worked to the disadvantage, injury or prejudice of the person seeking to invoke it." 22 Am. Jur. 2d *Declaratory Judgments* § 78 (1965). *See also,* 101 C.J.S. *Zoning* § 354 (1958).

[8, 9]    A petition to a city's governing body to reclassify an area zoned for single-family dwellings so as to permit the construction of multi-family dwellings or apartment houses is notice to all interested persons that the applicant, if his petition is allowed, has present plans to construct multi-family units in the rezoned area. Upon the passage of an ordinance reclassifying the property the next move is up to those who would challenge its legality. Thus, a delay in seeking a determination of the invalidity of a properly enacted zoning ordinance until after expenditures are incurred in reliance upon the ordinance, or an amendment thereto, may constitute laches or inequitable conduct barring judicial relief. 101 C.J.S. *Zoning* § 354 (1958). In *Richards v. Ferguson,* 252 Ark. 484, 479 S.W. 2d 852 (1972), a delay of twenty months after the amendment of the zoning ordinance, during which time the purchaser of the rezoned property incurred expense with respect to topographical survey, engineering studies, development plans, and architectural designs, was held to preclude "neighboring homeowners" from attacking the ordinance.

The defense of laches was not asserted or considered in our prior cases in which the validity of a zoning or rezoning ordinance was challenged by action for a declaratory judgment. *Allgood v. Town of Tarboro,* 281 N.C. 430, 189 S.E. 2d 255 (1972) ; *Blades v. City of Raleigh, supra; Allred v. City of Raleigh, supra; Zopfi v. City of Wilmington,* 273 N.C. 430, 160 S.E. 2d 325 (1968) ; *Armstrong v. McInnis, supra; Walker v. Town of Elkin,* 254 N.C. 85, 118 S.E. 2d 1 (1960). It is noteworthy that in all of these cases the suits were instituted from within four days to three months of the passage of the ordinances.

In *Walker,* the rezoning ordinance was adopted 5 January 1960; the action was commenced 31 March 1960. In *Armstrong,* the rezoning ordinance was adopted 4 October 1963; the action was commenced 6 December 1963. In *Zopfi,* the rezoning ordinance was adopted 3 March 1967; the action was commenced 4 May 1967. In *Allred,* the rezoning ordinance was adopted 3 March 1969; the action was commenced 7 March 1969. In

*Blades,* the rezoning ordinance was adopted 1 December 1970; the action was commenced 21 December 1970. In *Allgood,* the rezoning ordinance was adopted 11 January 1971; the action was commenced 15 February 1971. In each case, the declaratory judgment action constituted a prompt challenge of the rezoning ordinance. We also note that in *Allred* and *Blades,* in which rezoning ordinances were successfully challenged, the action was instituted by a large number of nearby property owners.

In the present case plaintiffs, although not spokesmen before the City Council, were among the large number of persons who joined in protesting the rezoning of Mangum's *entire 85-acre tract* from R-4 to R-6. Notwithstanding notice of hearings to consider the annexation of the rezoned 39.89 acres was published, the minutes of the City Council do not show that any persons inside or outside the then corporate limits protested the proposed annexation. The minutes also disclose that at least two of the plaintiffs had full knowledge of Mangum's efforts; that their opposition was to the recommended location of the water and sewer lines; and that they suggested alternative locations.

[10] It is quite clear that plaintiffs, even now, would have no objection to the rezoning or the annexation ordinance had the City chosen another route for its sewer line. In refutation of defendants' plea of laches they state in their brief that they "were unaware at the time either the annexation or rezoning ordinance was enacted that an easement across their properties was going to be condemned by the City of Raleigh." Clearly this constitutes no reasonable excuse for plaintiffs' failure to assert their right, if any, to challenge the rezoning ordinance.

We must now consider whether plantiffs' long delay in bringing this action has prejudiced, disadvantaged, or injured the defendants. In this regard the minutes of the various meetings of the City Council disclose the continuing and extensive activity of Mangum and his attorneys to work out with the City plans for locating and financing a water and sewer system to service his proposed 200-unit apartment development on the rezoned 39.89 acres.

Furthermore, the map dated June 1972, which is attached to the petition in the condemnation proceeding against the Taylor plaintiffs, shows that it was based on an actual survey made by Rose, Pridgen and Freeman, Engineering Associates, Inc.

The minutes of the meeting of the City Council held 16 October 1972 disclose that Mangum's efforts to obtain by negotiation the necessary easements for water and sewer lines had failed and that he had to call for "city assistance." Most certainly all this activity was carried on in reliance upon the validity of the rezoning ordinance.

The affidavit of W. E. Mangum, filed 19 January 1973, states: "That in reliance upon Ordinance No. (1970) 33ZC91 and Ordinance No. (1972) 211, he has expended the following amounts of money: (1) $5,663.45 for architectural fees incurred in the design of a development compatible with the R-6 zoning on the land covered by the said ordinances; (2) $15,104.11 for engineering fees expended for the design of a sewer line to serve the land covered by the said Ordinances; (3) $2,500.00 for related attorney fees; for a total of $23,267.56.

"The above total figure includes only out of pocket expenses and his employees, which expense, if included, would greatly and does not include time and expenses incurred by the affiant increase the above total figure."

[11] Plaintiffs have not challenged the statements in Mangum's affidavit as required by G.S. 1A-1, Rule 56, sections (e) or (f). On the contrary, the documentary evidence (City Council minutes, etc.) submitted by plaintiffs, except in respect of the exact amounts of Mangum's out of pocket payments substantially support Mangum's statements. We further note that a finding in accordance with the facts stated in Mangum's affidavit is included among the "Findings of Fact" in Judge Hobgood's judgment of 13 August 1973. This discloses that Judge Hobgood had no misgiving as to the truth of Mangum's statements. Thus, as to the cedibility of Mangum's affidavit "there are only latent doubts, that is doubts which stem from the fact that [he] is an interested [party]." *Kidd v. Early*, 289 N.C. 343, 371, 222 S.E. 2d 392, 411 (1976).

In *Kidd v. Early, supra,* we held "that summary judgment may be granted for a party with the burden of proof on the basis of his own affidavits (1) when there are only latent doubts as to the affiant's credibility; (2) when the opposing party has failed to introduce any materials supporting his opposition, failed to point to specific areas of impeachment and contradiction, and failed to utilize Rule 56(f); and (3) when

summary judgment is otherwise appropriate." *Id.* at 370, 222 S.E. 2d at 410.

[12]  Assuming *arguendo* that plaintiffs were sufficiently adversely affected by the rezoning ordinance to have standing to attack it, we hold that, under the undisputed facts, their delay of two years and twenty-two days from the adoption of the rezoning ordinance until the institution of this action constituted laches on their part; that on account thereof plaintiffs' action is barred; and that summary judgment to defendants is appropriate. Hence, defendants' motion for summary judgment on the grounds stated herein was proper.

Plaintiffs' exceptions to the judgment of 13 August 1973 indicate a misunderstanding or misapprehension of the nature of the hearing on 1 August 1973. They indicate plaintiffs considered it a hearing to consider solely whether defendants' motions for summary judgment should be granted. Upon such hearing, the questions for decision are: (1) whether there is a genuine issue of material fact, and, if not, (2) whether upon the undisputed facts the movant is entitled to judgment as a matter of law. G.S. 1A-1, Rule 56(c); *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). The extensive "Findings of Fact" in the judgment of 13 August 1973 are consistent with a final hearing on the merits, when questions of fact are resolved by the court. *See Zopfi v. City of Wilmington, supra* at 438, 160 S.E. 2d at 333. We note that Judge Hobgood found the facts in accordance with defendants' contentions with reference to the subtantive features of the case. However, in view of plaintiffs' exceptions to the effect that these "Findings of Fact" were inappropriate, we have elected to affirm the judgment granting summary judgment for defendants on the grounds set forth herein rather than remand for a *de novo* hearing in the superior court.

The charter of the City of Raleigh, Ch. 1184, Secs. 89 and 90, N. C. Sess. Laws (1949) authorizes the City, *inter alia,* to construct and operate a sewerage system in order to furnish such service to residents of the City and, in its discretion, to persons and corporations desiring the same outside the corporate limits. The City is empowered to condemn easements within and without the City for the purpose of furnishing sewage disposal and treatment services for the City and its citizens. Under Ch. 989, Sec. 2, N. C. Sess. Laws (1967), when Mangum's 39.89

Taylor v. City of Raleigh

acres became a part of the City of Raleigh on 26 June 1972, that area became entitled to the same benefits and privileges of other parts of the City.

It is perhaps noteworthy (1) that the minutes of meetings of the Citiy Council prior to the authorization of the condemnation proceedings and the condemnation proceedings themselves disclose that the water and sewer lines approved and authorized by the City Council, in addition to the annexed 39.89 acres, would also serve a large populous area, very near but outside the primary limits of Raleigh, an area which includes all or a portion of the Laurel Hill Subdivision; and (2) that the City's proposed water and sewerage system is a more dependable method of sewage disposal than the septic tank treatment now relied on by the residents of the area lying between the City proper and the 39.89-acre satellite.

We affirm the decision of the Court of Appeals that plaintiffs are barred by laches from attacking the rezoning ordinance; that they have no standing to challenge the annexation ordinance; and that they cannot restrain the City from prosecuting the condemnation proceedings it has brought against them. In doing so we also note, as did the Court of Appeals, that if plaintiffs have any defenses *to the condemnation proceedings* they may be asserted in those actions.

For the reasons stated, the decision of the Court of Appeals is

Affirmed.

Justices COPELAND and EXUM did not participate in the consideration or decision of this case.