**SAVE OUR SCHOOLS OF BLADEN CTY. v. BLADEN CTY. BD. OF EDUC.**

[140 N.C. App. 233 (2000)]

SAVE OUR SCHOOLS OF BLADEN COUNTY, INC., Plaintiff v. BLADEN COUNTY
BOARD OF EDUCATION, Defendant

No. COA99-1290

(Filed 3 October 2000)

**Laches— school consolidation plan—delay awaiting bond referendum—summary judgment**

Summary judgment on the basis of laches was warranted for defendant board of education in an action that sought an injunction to prevent defendant from proceeding with a school building and consolidation program where plaintiff's issues were based on actions taken by defendant prior to its vote to proceed in July of 1997; plaintiff did not begin an action then but made an apparently tactical decision to see if a bond referendum would settle matters; the bond referendum passed in September of 1998, but plaintiff did not institute suit until March of 1999; defendant proceeded during that time with actions necessary to carry out the consolidation; and defendant pled the affirmative defense of laches. There is no factual dispute; plaintiff may be charged with knowledge of the facts underlying the claim, plaintiff could have brought the suit when defendant approved the consolidation plan in July of 1997, and defendant was prejudiced. Although laches was not mentioned in the summary judgment order, summary judgment will be affirmed if it can be sustained on any grounds.

Appeal by plaintiff from judgment filed 5 August 1999 by Judge Knox V. Jenkins, Jr., in Bladen County Superior Court. Heard in the Court of Appeals 15 August 2000.

*Anderson, Johnson, Lawrence, Butler & Bock, L.L.P., by Steven C. Lawrence, for plaintiff-appellant.*

*Tharrington Smith, L.L.P., by Michael Crowell, and Hester, Grady, Hester, Greene & Payne, by Donna Gooden Payne, for defendant-appellee.*

EDMUNDS, Judge.

Plaintiff Save Our Schools of Bladen County, Inc. appeals the trial court's order granting summary judgment to defendant Bladen County Board of Education. We affirm.

In 1995, in anticipation of a major state school bond issue, the North Carolina Department of Public Instruction (DPI) mandated that each school system conduct an assessment of its anticipated needs and prepare a ten-year building plan. At the request of defendant, DPI conducted an assessment of Bladen County schools and prepared its plan. DPI's study revealed that it would cost approximately $35 million to bring the existing school facilities up to standard. Plan development and adjustments for inflation increased the overall estimated cost to approximately $45 million.

Although in December 1995 the Board of Commissioners of Bladen County (the commissioners) approved the DPI report and plan in order to satisfy the deadline for the state bond issue, the commissioners requested that defendant develop a more economical and educationally sound plan. Accordingly, defendant began exploring other options after the passage of the school bond referendum in November 1996. Bladen County school superintendent Dr. Byron Lawson and his staff settled on five possible proposals. These were presented to defendant in February 1997 at a one-day retreat, which was open to the public.

At the retreat, defendant's members reached a nonunanimous consensus in favor of a proposal that included closing the county's two middle schools, converting its three existing high schools into middle schools, and building two high schools. Defendant voted 7-1 to proceed with this option at its May 1997 meeting, and in June 1997, defendant scheduled a public hearing for the thirtieth day of that month. Three articles and one editorial discussing the proposed construction plan were printed in the local Bladen County newspaper.

After the sparsely-attended public hearing, defendant on 21 July 1997 voted 7-1 to approve its building and consolidation program. However, only approximately $11 million was available to defendant from the state bond referendum, which was insufficient to carry out the plan. Defendant requested that the commissioners issue an additional $25 million in local bonds to make up for the shortfall. A county bond referendum was set for September 1998, and both opponents and supporters of the plan campaigned actively before the election. The referendum passed and was upheld over protest.

On 9 March 1999, plaintiff, a nonprofit North Carolina corporation composed of Bladen County citizens and taxpayers, filed suit, seeking an injunction to prevent defendant from proceeding

further with its plan. Plaintiff alleged that defendant instituted the consolidation plan without conducting a thorough study and without properly noticing and holding public hearings, in violation of N.C. Gen. Stat. § 115C-72 (1999); that defendant had thereafter entered into option contracts for the purchase of real estate without approval from county commissioners, in violation of N.C. Gen. Stat. § 115C-426 (1999); that defendant entered into the consolidation plan without amending its previous budget resolution, in violation of N.C. Gen. Stat. §§ 115C-432(4) and 115C-433 (1999); and that defendant failed to conduct a construction versus renovation analysis, in violation of N.C. Gen. Stat. § 115C-521 (1999). Defendant asserted a Rule 12(b)(6) defense for failure to state a claim upon which relief may be granted, N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (1999), and also raised laches as an affirmative defense, see N.C. Gen. Stat. § 1A-1, Rule 8(c) (1999). Defendant thereafter filed a motion for summary judgment supported by affidavits from Dr. Lawson, school board members, and Larry Hammond, the director of elections for Bladen County. After hearing arguments and considering briefs, depositions, affidavits, and exhibits, the trial court granted defendant's motion. Plaintiff appeals.

Although plaintiff's appeal raises several issues pertaining to defendant's compliance with N.C. Gen. Stat. § 115C-72 prior to instituting its school consolidation plan, we need not reach these questions. In its answer, defendant pled the affirmative defense of laches. See N.C. Gen. Stat. § 1A-1, Rule 8(c).

> In equity, where lapse of time has resulted in some change in the condition of the property or in the relations of the parties which would make it unjust to permit the prosecution of the claim, the doctrine of laches will be applied. Hence, what delay will constitute laches depends upon the facts and circumstances of each case. Whenever the delay is mere neglect to seek a known remedy or to assert a known right, which the defendant has denied, and is without reasonable excuse, the courts are strongly inclined to treat it as fatal to the plaintiff's remedy in equity, even though much less than the statutory period of limitations, if an injury would otherwise be done to the defendant by reason of the plaintiff's delay.

*Teachey v. Gurley*, 214 N.C. 288, 294, 199 S.E. 83, 88 (1938). The burden of proving laches is on the party pleading the affirmative defense. *See Poultry Co. v. Oil Co.*, 272 N.C. 16, 157 S.E.2d 693 (1967).

When laches is raised, an appellate court faces

a three-fold question: (1) Do the pleadings, affidavits and exhibits show any dispute as to the facts upon which defendants rely to show laches on the part of plaintiffs? (2) If not, do the undisputed facts, if true, establish plaintiffs' laches? (3) If so, is it appropriate that defendants' motion for summary judgment, made under G.S. 1A-1, Rule 56(b), be granted?

*Taylor v. City of Raleigh*, 290 N.C. 608, 621, 227 S.E.2d 576, 584 (1976). The facts in the case at bar are undisputed. In February 1997, at a public retreat, defendant reached a nonunanimous consensus to proceed with consolidation, and at its meeting in May 1997, defendant formally decided to begin the consolidation process. On 2 June 1997, defendant scheduled a public meeting for 30 June 1997, and after that meeting, defendant in July 1997 gave final approval to the building plan. The successful bond referendum was held in September 1998, and plaintiff brought suit in March 1999.

We next address whether these undisputed facts establish laches. As an initial matter, we note that laches serves as a bar only when the claimant knew of the existence of the grounds for the claim. *See Abernethy v. Town of Boone Bd. Of Adjustment*, 109 N.C. App. 459, 427 S.E.2d 875 (1993). Affidavits and depositions in the record establish that public debate over the wisdom of consolidation began after the February 1997 retreat where defendant first reached a consensus in favor of consolidation. Although plaintiff disputes the diligence with which news of the proposed consolidation was disseminated, there is ample evidence in the record that the issue was a matter of controversy in the community. The local newspaper ran specific articles and an equally specific editorial setting forth the time, place, and date of the meeting and the issue to be addressed. *See* Editorial, *School Expansion Project Must Have Our Support*, Bladen Journal, June 27, 1997, at 4A ("But don't take our word for it. Attend the Board of Education's public meeting this Monday, June 30 at 7:30 p.m. It will be held in the superior courtroom of the county courthouse and is intended as a forum for citizens to get answers and to voice their opinions regarding the expansion project."). These articles are in contrast to the general articles found insufficient to give a petitioner notice of the facts underlying a claim in *Allen v. City of Burlington Bd. of Adjustment*, 100 N.C. App. 615, 397 S.E.2d 657 (1990). In addition, one member of plaintiff is a spouse of a school board member, and another member of plaintiff, in an affidavit, described obtaining

information about consolidation as early as July 1996. Accordingly, plaintiff may be charged with knowledge of the facts underlying its claim.

" '[T]he mere passage or lapse of time is insufficient to support a finding of laches; for the doctrine of laches to be sustained, the delay must be shown to be unreasonable and must have worked to the disadvantage, injury or prejudice of the person seeking to invoke it.' " *Taylor*, 290 N.C. at 622-23, 227 S.E.2d at 584-85 (quoting 22 Am. Jur. 2d *Declaratory Judgments* § 78 (1965)). Because plaintiff challenges the thoroughness of defendant's study prior to proceeding with consolidation and the sufficiency of defendant's notice of public hearing on the plan, plaintiff could have brought the instant suit when defendant gave final approval to the consolidation plan in July 1997. Instead, plaintiff waited to see the results of the September 1998 referendum, then waited another six months. According to plaintiff's complaint and defendant's answer, defendant has entered into contracts that include options to purchase land for the consolidated schools. These actions undertaken by defendant in compliance with the results of its own vote to consolidate and passage of the school bond issue in a general election demonstrate that defendant has been prejudiced by plaintiff's delay. This evidence is sufficient to establish plaintiff's laches.

Finally, we must consider whether summary judgment was appropriate. Summary judgment may be granted in favor of a defendant raising an affirmative defense of laches, *see Cannon v. City of Durham*, 120 N.C. App. 612, 463 S.E.2d 272 (1995), and "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law,' " *Thompson v. Three Guys Furniture Co.*, 122 N.C. App. 340, 344, 469 S.E.2d 583, 585 (1996) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c)). As noted above, there is no dispute about the facts alleged to constitute laches. The trial court recited that it had considered affidavits, depositions, and briefs and arguments of the parties, as summarized above. The court's order granted summary judgment on the basis of its finding that defendant did comply with the statutory requirements for undertaking the consolidation program. Although laches was not mentioned in the order, "[i]f the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal. If the correct result has been reached, the judgment will not be disturbed even though the trial court may

not have assigned the correct reason for the judgment entered." *Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d. 778, 779 (1989) (citations omitted).

A survey of cases involving delayed challenges to state actions may be found in *Taylor*, 290 N.C. 608, 227 S.E.2d 576. In *Taylor*, the action challenging a rezoning ordinance was brought two years and twenty-two days after the ordinance was adopted; during that time, the purchaser of the rezoned property incurred expenses in the development and use of the property. The Supreme Court held that laches barred the suit challenging the rezoning. By contrast, laches was not found in other cases recited in *Taylor* where challenges had been brought within four days to three months of the passage of the ordinance.

In the case at bar, plaintiff's issues are based on actions taken by defendant prior to its vote to proceed with consolidation in July 1997. Instead of instituting suit at that time, plaintiff made what appears to have been a tactical decision to wait and see whether defeat of the bond referendum would settle matters. When the referendum passed in September 1998, plaintiff still did not institute suit until March 1999. During that time, defendant was proceeding with actions necessary to carry out the consolidation. Based on plaintiff's delay and the resulting prejudice to defendant, we hold that summary judgment was properly granted.

Affirmed.

Judges GREENE and SMITH concur.